In Re: SULZER ORTHOPEDICS INC. HIP PROSTHESIS AND KNEE PROSTHESIS PRODUCTS LIABILITY LITIGATION

No. 1:01–CV–9000.
MDL NO. 1401, 1:03–CV–9007.

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 25, 2004.

Charles R. Parker, Hill & Parker, Houston, TX, Daniel E. Becnel, Jr., Reserve, LA, David W. Zoll, Zoll & Kranz, Toledo, OH, Debra J. Horn, Meyers, Roman, Friedberg & Lewis, John R. Climaco, Climaco Lefkowitz Peca Wilcox & Garofoli, Mary B. McKee, Hickman & Lowder, Phillip A. Ciano, Ciano & Goldwasser, R. Eric Kennedy, Weisman, Kennedy & Berris, Timothy J. Gallagher, Schwarzwald & McNair, Cleveland, OH, Don Barrett, Barrett Law Office, Lexington, MS, James R. Dugan, II, Wendell H. Gauthier, Gauthier, Dowing, Labarre, Beiser & Dean, Metairie, LA, Janet G. Abaray, Lopez Hodes Restaino Milman Skikos Polos, Richard S. Wayne, Strauss & Troy, Stanley M. Chesley, Waite, Schneider, Bayless & Chesley, Glen Edward Hazen, Jr., Tracy Annette Smith, Morgan, Hazen & Galbreath, Cincinnati, OH, John T. Murray, Sylvia Antalis Goldsmith, Murray & Murray, Sandusky, OH, Keith M. Fleischman, Milberg Weiss Bershad Hynes & Lerach LLP, Lee Squitieri, Squitieri & Fearon, New York City, Stephen B. Murray, Jr., Murray Law Firm, New Orleans, LA, Steven M. Tindall, Lieff, Cabraser, Heimann & Bernstein, San Francisco, CA, John L Davidson, Frazer Davidson, P.A., Jackson, MS, Michael E. Cox, Biloxi, MS, Laura Citrano, Neil Papiano, Iverson Yoakum Papiano & Hatch, Los Angeles, CA, for Plaintiffs.

David W. Brooks, Bradley D. Honnold, Harvey L. Kaplan, Matthew D. Keenan, Shook, Hardy & Bacon, Kansas City, MO, J. Patrick Herald, James J. Dries, Richard M. Franklin, Baker & McKenzie, Chicago, IL, Jeffrey M. Whitesell, Irene C. Keyse-Walker, Robert C. Tucker, Arter & Hadden, Bridget M. Brennan, Mary M. Bittence, Baker & Hostetler, Cleveland, OH, Sheryl Medeiros, Skadden Arps Slate Meagher & Flom, Kenneth M. Seeger, Crosby, Heafey, Roach & May, Steven J. Boranian, Reed Smith Crosby Heafey LLP, San Francisco, CA, Richard F. Scruggs, Scruggs Law Firm, Sidney A. Backstrom, Pascagoula, MS, Werner L. Polak, Shearman & Sterling, New York City, for Defendants.

Frank Hilton–Green Tomlinson, Pritchard, McCall & Jones, K. Dee Hutsler, III, Birmingham, AL, for Intervenor.

O'MALLEY, District Judge.

For the reasons stated below: (1) plaintiffs' motion to amend the complaint (docket no. 10) is **DENIED**; (2) Sulzer's motion to stay discovery (docket no. 13) is **DENIED**; and (3) Sulzer's motion for summary judgment (docket no. 2338, in related case no. 01–CV–9000) is **GRANTED**. Accordingly, this case is **DISMISSED**.

### I. Procedural History and Undisputed Facts.

The following facts are not in dispute. Plaintiff Norman Stahl was implanted with one of the "Affected Products" that are the subject of the Multi–District Litigation

pending before this Court in the case known as *In Re: Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation,* MDL No. 1401, Case No. 01–CV–9000. Specifically, Norman was implanted with an Inter–Op acetabular shell, which he later had removed pursuant to "revision surgery." The *In Re: Sulzer* MDL case ultimately settled, with each plaintiff class member who underwent revision surgery to remove an "Affected Product" receiving at least $160,000.

Well before *In Re: Sulzer* finally settled, however, Norman and Betty Stahl reached their own, private settlement with Sulzer, and signed a release. In particular, on September 4, 2001, the Stahls and Sulzer entered into a written settlement agreement, which the Stahls' attorney, Richard Carpenter, also signed (affirming he had "approved and witnessed" the Agreement). Among other terms, the parties' settlement and release provided that Sulzer would: (1) pay the Stahls and their attorney $60,000; and (2) pay all subrogation claims brought by any insurer related to Norman's revision surgery. Obviously, the Stahls' private settlement with Sulzer provided them with less compensation than they might have obtained by participating in the class action settlement.

Just above the Stahls' and their attorney Carpenter's signatures, the Settlement Agreement sets out the following language:

*INFORMED AND AUTHORIZED EXECUTION*

> [The Stahls] agree and represent that [they] have carefully considered settlement of the claims as described in this Release and that [they] desire to fully and finally compromise said claims for the consideration specified in this Release. [The Stahls] understand they are entitled to seek the advice of an attorney before signing this release.

> [The Stahls] declare and represent that there have been no other inducements for this settlement and compromise other than the consideration specified in this Release. In executing this Release, [the Stahls] declare and represent that [they] have not been influenced to any extent by any representations made by [Sulzer], or by agents of or counsel for [Sulzer].

Agreement at 4. The Agreement also provided that, in consideration for the promised payments, the Stahls could not make any further claims against Sulzer arising out of the implantation of the Sulzer Inter–Op acetabular shell. *Id.* at 2.

Sulzer made the promised payments to the Stahls. Nonetheless, about one year later, after the Class Action Settlement was reached in the MDL, the Stahls submitted a claim for class action settlement benefits. The Claims Administrator rejected the Stahls' class action claim, based on the Stahls' prior, individual Settlement Agreement.

On April 11, 2003, after their claim for class action benefits was denied, the Stahls filed the instant case in Oklahoma state court, seeking to "set aside" their private settlement and release agreement with Sulzer. Sulzer removed the case to the United States District Court for the Northern District of Oklahoma, based on diversity jurisdiction. The Judicial Panel on Multi–District Litigation then transferred the case to this Court, as related to *In Re: Sulzer.* This Court earlier denied a motion by the Stahls to remand the case back to Oklahoma state court, premised on an insufficient amount in controversy to support diversity jurisdiction.

In this case, the Stahls advance a single claim: Sulzer "exercised undo [sic] advantage, misrepresentation, omission, and financial duress" during the negotiation of their private Settlement Agreement, so

that the Agreement should now be set aside. In their proposed amended complaint, the Stahls state with greater particularity the alleged misrepresentations by Sulzer during settlement negotiations. The Stahls' critical allegations are that, during negotiation of the Settlement Agreement: (1) Sulzer "represented that it was at risk of failing to survive as a company in light of the financial demands that were being made against it as a result of implantation of defective devices in a great number of people"; (2) Sulzer further represented that financial failure would leave it unable to pay *any* claims to *any* claimants, including the Stahls; and (3) Sulzer made these representations about corporate survival "at a time when [Sulzer] knew that many financial sources were available to satisfy all claims against it." Proposed amended complaint at 2.

Although the Stahls do not say so explicitly, if the Court finds their claim well-taken, they presumably would then return the $60,000 in private Settlement benefits earlier received and apply for the $160,000 in Class Action Settlement Benefits.

## II.

Federal Rule of Civil Procedure 56(©) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ....

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirma-

tively that the affiant is competent to testify to the matters stated therein .... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.*

at 252, 106 S.Ct. 2505. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir.1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D.Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

## III.

■ The parties agree that Oklahoma law applies to this case, and also agree that, under Oklahoma law, "[t]he elements of common-law fraud are: 1) a false material misrepresentation; 2) made as a positive assertion which is either known to be false, or made recklessly without knowledge of the truth; 3) with the intention that it be acted upon; and 4) which is relied upon by a party to one's detriment." *Gay v. Akin,* 766 P.2d 985, 989 (Okla.1988). Sulzer argues the undisputed facts show the Stahls cannot establish the first or

fourth elements of their fraud claim, as a matter of law. The Court agrees.

■ As to the fourth element, the Stahls must show they actually relied upon the alleged misrepresentations by Sulzer, to their detriment. In the Settlement Agreement itself, however, the Stahls affirmed they did *not* rely on these alleged misrepresentations before deciding to settle their claims. The Stahls agreed in writing that, other than the promised payments of $60,000 and any subrogated medical claims, they received "no other inducements for this settlement and compromise." The Stahls, with the approval of their attorney Carpenter, "declare[d] and represent[ed] that [they] ha[d] not been influenced to any extent by any representations made by [Sulzer], or by agents of or counsel for [Sulzer]." Put simply, the Stahls agreed in writing that, when they decided to settle their claims, they did not rely on anything except promise of payment.

■ The Stahls try and avoid the force of this clear language by use of parol evidence. Oklahoma law is clear, however, that, "by force of the parol evidence rule pre-contract negotiations and oral discussions are merged into, and superseded by, the terms of an executed writing. Parol evidence cannot vary, modify or contradict the terms of an executed written agreement." *American Economy Ins. Co. v. Bogdahn,* 89 P.3d 1051, 1060 n. 12 (Okla. 2004) (Opala, J., concurring) (citations omitted). The Stahls insist the parol evidence rule does not apply in this case—and, therefore, the written provision to which they agreed, stating they did not rely on any oral representations by Sulzer, does not apply—because they are making a claim for fraud in the inducement. The Stahls note that, "[u]nder the law of Oklahoma, '[o]ne who is fraudulently induced to execute a written contract by the oral mis-

representation of the opposite party may always show that fact in evidence when he bases his defense on fraud in inducing the making of the contract,' and 'he may do this even though the contract sued on provides that all the agreements or representations between the parties are contained therein.'" *Thrifty Rent–A–Car Systems, Inc. v. Brown Flight Rental One Corp.,* 24 F.3d 1190, 1195 (10th Cir.1994) (quoting *Bowersock v. Barker,* 186 Okla. 48, 96 P.2d 18, 19 (1939)).

The same case, however, notes further that, "[i]In order to protect against a fraud in the inducement allegation from swallowing up the time-honored rule that the plain, unambiguous terms of a written contract are binding on the parties, Oklahoma requires that the fraud must be established by clear and convincing evidence." *Id.* The Court concludes the Stahls come nowhere near meeting this high burden of proof; the Stahls adduce nothing but speculation regarding the first element of their fraud claim.

■ Specifically, the Stahls insist Sulzer engaged in misrepresentation when it stated in August of 2001, during settlement negotiations, that "there was a real threat [Sulzer] would not survive the burden of the claims that were being presented." Carpenter affid. at ¶ 2. But, the undisputed facts reveal this representation was in no way false. At the same time the Stahls were negotiating with Sulzer, Sulzer was attempting to negotiate a class action settlement. The Court preliminarily approved a class action settlement on August 31, 2001, a few days *before* the Stahls signed their Agreement. This preliminary class action settlement agreement provided that claimants who had undergone one revision surgery, like plaintiff Norman Stahl, would receive compensation in the amount of "$37,500 in cash, $20,000 in stock, and $5,000 to their spouses." *See* case no. 01–CV–9000, docket no. 738 ("*Attorney Fee Order*") at 11 (recapitulating the history of the settlement negotiations). Whether any claimant would actually receive this settlement amount, however, remained very much in doubt: "even after the parties had reached their initial settlement agreement, the deal almost collapsed several times; it was not until February of 2002 that settlement was essentially assured and any meaningful contingency removed." *Attorney Fee Order* at 49. Thus, the Court's observation on August 31, 2001, when it approved the initial class action settlement agreement, remained true until February of 2002: "the most likely outcome if this case does not settle as a class action is that at least one of the Sulzer-related entities will go bankrupt, [and] the majority of the class members will not actually receive compensatory relief promptly (if at all)." *See* case no 01–CV–9000, docket no. 61, Order at 50.

In other words, by entering into their Settlement Agreement on September 4, 2001, the Stahls *guaranteed* themselves compensation from Sulzer which, only a few days earlier, the Court had stated was, for every other class member: (1) fair; and (2) highly *contingent,* because Sulzer could (in the Stahls' words) "fail to survive as a company."

As a last ditch effort to avoid dismissal of their fraud claim, the Stahls employ two procedural tactics: first, they seek to amend their complaint to allege the fraud with more particularity; second, they invoke Fed.R.Civ.P. 56(f), asserting they cannot sufficiently respond to the motion for summary judgment until they can pursue discovery regarding Sulzer's knowledge and actions in settling the Class Action case. The motion to amend is denied, because it would be futile; as discussed above, even with the "more particular" allegations of fraud, the undisputed facts

show the Stahls are not entitled to relief. Similarly, the Rule 56(f) motion fails because the Stahls have identified no discovery that could possibly support their assertion that any of Sulzer's representations during the negotiation process were false.[1]

In conclusion, Sulzer characterizes the Stahls' claim as "nothing more than a case of buyer's remorse." Motion at 1. The Court finds this description apt. The fact is that the Stahls' settlement agreement was a good one when they entered into it; that they could have risked getting nothing and ultimately received more does not provide a valid basis to set aside their Agreement, nor to pursue a claim of fraud. As an Oklahoma appellate court affirmed, a settlement and release will not be set aside merely because the "[p]laintiff harbors substantial misgivings." *Vela v. Hope Lumber & Supply Co.*, 966 P.2d 1196, 1199 (Okla.Civ.App. Div. 1 1998) (further noting that, as in this case, "[the plaintiffs] understood the nature and consequences of [their] acceptance of the settlement terms, and [the parties'] Agreement contain[ed] no ambiguity which could have caused its execution by mistake"). Accordingly, Sulzer's motion for summary judgment must be granted.

**IT IS SO ORDERED.**

---

1. The Court does not even fully understand the Stahls' discovery theory. Attorney Carpenter avers that, because Sulzer sent the Stahls a Class Action settlement notice, Sulzer somehow admitted that its earlier, individual settlement with the Stahls was "not performed properly." Carpenter affid. at 12. It is, at best, unclear how discovery could prove this vague theory true.