2013 OK 17

Brian C. HOWARD, M.D.; Suzanne Howard, Plaintiffs/Appellants,

v.

ZIMMER, INC., Defendant/Appellee,

and

Sulzer Orthopedics, Inc.; Sulzer Medica USA Holding Co.; Sulzer Medica USA, Inc., Defendants.

No. 110,857.

Supreme Court of Oklahoma.

March 19, 2013.

Timothy G. Best, Matthew B. Free, BEST & SHARP, Tulsa, Oklahoma, for Plaintiffs/Appellants.

Michael F. Smith, Thomas Steichen, McAffee & Taft, Tulsa, Oklahoma, for Defendant/Appellee.

David W. Brooks, William F. Northrip, Shook, Hardy & Bacon L.L.P., Kansas City, Missouri.

WATT, J.:

¶ 1 The United States Court of Appeals for the Tenth Circuit (Tenth Circuit) certified a single question of first impression to this Court under the Revised Uniform Certifica-

tion of Questions of Law Act, 20 O.S.2011 § 1601, *et seq.* We are not asked whether the negligence claim is preempted by federal law as the Tenth Circuit has resolved that preemption analysis has no place in the cause. Rather, we were requested to address a related, first impression question.[1] The reformulated, first impression question we address is dispositive. It asks:

"Whether 21 U.S.C. 337[2] of the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301 *et seq.*, providing that all violations of the Act shall be prosecuted in the name of the United States, prohibits Oklahoma from recognizing a claim for negligence per se[3] based on violation of a federal regulation under the Medical Device Amendments (MDA) to the FDCA?"[4]

The question is answered in the negative.

## CERTIFIED FACTS[5] AND PROCEDURAL BACKGROUND

¶2 The plaintiff/appellant, Brian C. Howard, M.D. (Howard/patient), received a knee replacement manufactured by the defendant, Sulzer Orthopedics, Inc. (Sul-

---

**1.** As originally certified, the question provides:

"Does Oklahoma recognize a claim for negligence per se based on an alleged violation of 21 C.F.R. § 820.70(h), a federal regulation promulgated pursuant to the Medical Device Amendments to the Food, Drug, and Cosmetic Act, even though those enactments do not allow private rights of action?"

Certification of Question of State Law, filed on July 9, 2012, providing in pertinent part at p. 7: "... [W]e conclude that the law of the case prevents us from reconsidering the implied-preemption question.... Having resolved that preemption analysis no longer has any place in this case, we turn to Oklahoma state law...."

Even if the preemption issue were before us, we likely would have taken the same position as that of Sixth Circuit, *i.e.* the Howards' claim would be allowed to go forward. The negligence per se claim is based on allegations that Sulzer did not clean the implant in accordance with the federal regulatory requirements. The United States Supreme Court has made it clear that state requirements are pre-empted only to the extent that they are different from, or in addition to the requirements imposed by federal law. States are not prevented from providing a damages remedy for claims premised on a violation of federal regulations. *Riegel v. Medtronic, Inc.*, see note 10, infra; *Medtronic v. Lohr*, see note 10, infra.

**2.** Title 21 U.S.C. § 337 providing in pertinent part:

"(a) Except as provided in subsection (b) of this section, all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States...."

Subsection (b) allows states to bring actions in their own names for civil enforcement of the statute in certain instances.

**3.** The negligence per se doctrine is employed to substitute statutory standards for parallel common law, reasonable care duties. When courts adopt statutory standards for causes of action for negligence, the statute's violation constitutes negligence per se. *Busby v. Quail Creek Golf & Country Club*, 1994 OK 63, ¶6, 885 P.2d 1326.

To establish negligence per se, the plaintiff must demonstrate the claimed injury was caused by the violation, and was of the type intended to be prevented by the statute. Finally, the injured party must be one of the class intended to be protected by the statute. *Lockhart v. Loosen*, 1997 OK 103, ¶9, 943 P.2d 1074; *Hamilton v. Allen*, 1993 OK 46, ¶9, 852 P.2d 697; *Ohio Cas. Ins. Co. v. Todd*, 1991 OK 54, ¶8, 813 P.2d 508. Liability per se enables plaintiffs to establish as a matter of law that the defendant's conduct constituted a breach of duty in a negligence action, so that only causation and damages need be proved. *In re: Orthopedic Bone Screw Products Liability Litigation*, see note 36, infra; *In re TMI*, 67 F.3d 1103 (3rd Cir.1995), *cert. denied*, 516 U.S. 1154, 116 S.Ct. 1034, 134 L.Ed.2d 111 (1996). The question of whether a causal connection exists between the violation of the regulation here and Sulzer's actions and whether those violations were negligence per se, is for the trier of fact. *Jones v. Oklahoma Natural Gas Co.*, 1994 OK 89, ¶¶17–18, 894 P.2d 415. See also, *Busby v. Quail Creek Golf & Country Club*, this note, supra.

**4.** The federal regulation at issue is 21 C.F.R. § 820.70(h) providing:

"Manufacturing material. Where a manufacturing material could reasonably be expected to have an adverse effect on product quality, the manufacturer shall establish and maintain procedures for the use and removal of such manufacturing material to ensure that it is removed or limited to an amount that does not adversely affect the device's quality. The removal or reduction of such manufacturing material shall be documented."

**5.** In answering a certified question, the Court does not presume facts outside those offered by the certification order. *In re Harris*, 2002 OK 35, ¶4, 49 P.3d 710; *Jones v. University of Central Oklahoma*, 1995 OK 138, ¶5, 910 P.2d 987. Although we will neither add nor delete such facts, we may consider uncontested facts supported by the record. *McQueen, Rains & Tresch, LLP v. CITGO Petroleum Corp.*, 2008 OK 66, fn. 4, 195 P.3d 35; *In re Harris*, this note, supra.

zer/manufacturer).[6] The implant failed and had to be removed allegedly because it did not bond to Howard's bone. Howard asserted that the implant was unsuccessful because Sulzer left oily residue on the implant in violation of federal regulations.

¶ 3 The long and tortured litigation trail began in this case in 2002 in the Northern District of Oklahoma. However, because the Howards' complaint was one of many concerning Sulzer implants, the Judicial Panel on Multi–District Litigation consolidated the cases in the Northern District of Ohio. Sulzer entered into a settlement agreement with patients receiving implants the manufacturer identified as having undergone a cleaning process which left lubricating machine oil on the implants. However, Howard's case was excluded from the settlement because his device was not in the lot Sulzer identified as being cleaned inappropriately.

¶ 4 Initially, the Ohio district court refused to dismiss Howard's negligence per se claim. Thereafter, Sulzer filed a summary judgment motion alleging that the negligence claim was preempted based on the implant's Pre–Market Approval (PMA) application. A PMA prescribes the manufacturer's obligations in manufacturing and distributing the device. Sulzer contended that Howard's device met all the prescribed standards. Nevertheless, Howard argued that the PMA also required Sulzer to follow the more general Good Manufacturing Practices (GMPs) incorporated in the PMA. GMPs are FDCA regulations based upon manufacturing standards that apply to all FDCA-regulated medical devices.[7] Among other things, they require a process to remove manufacturing materials like lubricating oil. The district court disagreed. It granted Sulzer summary judgment on grounds that Howard's claims were preempted and denied a motion to transfer the cause back to the Northern District of Oklahoma.

¶ 5 The Howards appealed the dismissal of their negligence per se claim to the Sixth Circuit. They argued that 21 C.F.R. § 820.70(h),[8] providing for the removal or limiting of manufacturing material to ensure a medical device's quality would not be affected, established a GMP requiring the removal of all manufacturing oil from the knee implant. Sulzer argued that the negligence per se claim was preempted, because the GMP only required that a process be in place to remove the oil, not that the oil actually be removed from the implant. Alternatively, the manufacturer insisted that any claim relying exclusively on violation of the FDCA or MDA to establish a breach of duty was impliedly preempted. In an unpublished opinion,[9] the Sixth Circuit held that the negligence per se claim for good manufacturing practices violations was not preempted. It determined that the GMPs required Sulzer to actually remove the machine oil from the implant rather than to merely have a process for removal in place.

¶ 6 On remand, the cause was transferred back to the Northern District of Oklahoma where Sulzer renewed its motion for summary judgment. The manufacturer argued that the non-preempted claim for negligence per se was not cognizable under Oklahoma state law. The district court agreed, dismissing the cause.

¶ 7 The Howards appealed to the United States Court of Appeals for the Tenth Circuit (Tenth Circuit). The Tenth Circuit certified a single question of first impression to this Court on July 9, 2012 pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S.2011 §§ 1601, et seq. We set a briefing cycle which was concluded with the filing of the patient's response brief on August 3, 2012.

## REGULATORY BACKGROUND

¶ 8 The Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301 et seq., requires

---

**6.** We refer to "Sulzer" as the manufacturer, as did the federal court, because that name had been utilized throughout the litigation. The parties are aware that Zimmer, Inc., is the proper defendant/appellee in the cause. Certification of Question of Law, filed with this Court on July 9, 2012.

**7.** See generally, 21 C.F.R. § 820.

**8.** 21 C.F.R. § 820.70(h), see note 4, supra.

**9.** *Howard v. Sulzer Orthopedics, Inc.*, 382 Fed. Appx. 436 (6th Cir.2010).

Federal Drug Administration (FDA) approval for the introduction of new drugs into the market. The introduction of new medical devices into the stream of commerce is governed by the Medical Device Amendments of 1976(MDA), 21 U.S.C. § 360c *et seq.*[10] The MDA was enacted to provide for the safety and effectiveness of medical devices intended for human use. It covers three classes of medical devices. Class I devices are those that present no unreasonable risk of illness or injury and therefore require only general manufacturing controls. Class II devices are those possessing a greater potential of dangerousness and thus warrant more stringent controls. Class III devises, such as knee replacements, present a potential for unreasonable risk of illness or injury and incur the FDA's strictest regulation.[11]

¶ 9 Class III devices must complete a thorough review process before they may be marketed. Pre–Market Approval (PMA) applications must be submitted and approved before medical devices may be distributed. A PMA prescribes the manufacturer's obligations in manufacturing and distributing the device. It is focused on safety, requiring that a device be made with almost no deviations from the specifications in its approval application.[12] Good Manufacturing Practices (GMPs) may be incorporated in the PMA. These practices are FDA regulations based upon manufacturing standards that apply to all FDA-regulated medical devices.[13] **Title 21 C.F.R. 820.70(h) is the GMP at issue in this cause. It requires manufacturers to establish procedures for removing or limiting manufacturing materials from medical devices to the extent that the material adversely affects the device's quality.**[14]

**¶ 10 Oklahoma law allows private individuals to maintain a parallel claim for negligence per se based on violation of a federal regulation whose enforcement lies with a governmental entity.**

**¶ 11 a) Federal regulations may form the basis of a negligence per se claim under Oklahoma law.**

¶ 12 Howard asserts that Oklahoma law will allow a claim for negligence per se to proceed based on the violation of a federal regulation. The patient contends that such a position is supported by a recent opinion promulgated by this Court. Sulzer argues that federal regulations are not the type of law which should give rise to negligence per se claims. The manufacturer also insists that recognizing such a claim would contravene legislative intent where no clear standard of conduct is outlined. We are not persuaded by Sulzer's arguments.

¶ 13 The negligence per se doctrine is employed to substitute statutory standards for parallel common law, reasonable care duties. When courts adopt statutory standards for causes of action for negligence, the statute's violation constitutes negligence per se.[15] To establish negligence per se, the plaintiff must demonstrate the claimed injury was caused by the violation, and was of the type intended to be prevented by the statute. Finally, the injured party must be one of the class intended to be protected by the statute.[16] Liability per se enables plaintiffs to establish as a matter of law that the defendant's conduct constituted a breach of duty in a negligence action, so that only causation and damages need be proven.[17] The question of whether a causal connection exists

10. *Riegel v. Medtronic, Inc.,* 552 U.S. 312, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008); *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996).

11. *Buckman Co. v. Plaintiffs' Legal Committee,* 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854.

12. *Riegel v. Medtronic, Inc.,* see note 10, supra.

13. *Howard v. Sulzer Orthopedics, Inc.,* see note 9, infra.

14. Title 21 C.F.R. § 820.70(h), see note 4, supra.

15. *Busby v. Quail Creek Golf & Country Club,* 1994 OK 63, ¶ 6, 885 P.2d 1326.

16. *Lockhart v. Loosen,* 1997 OK 103, ¶ 9, 943 P.2d 1074; *Hamilton v. Allen,* 1993 OK 46, ¶ 9, 852 P.2d 697; *Ohio Cas. Ins. Co. v. Todd,* 1991 OK 54, ¶ 9, 813 P.2d 508.

17. *In re: Orthopedic Bone Screw Products Liability Litigation,* see note 36, infra; *In re TMI,* 67 F.3d 1103 (3dCir.1995).

between the violation of the regulation here and Sulzer's actions and whether those violations were negligence per se, is for the trier of fact.[18]

¶ 14 Approximately six months before the instant question was certified to this Court, we issued an opinion in *Covel v. Rodriguez,* 2012 OK 5, 272 P.3d 705. One of the issues presented in *Covel* was whether the negligence *per se* instruction should have been given. The instruction provided that:

> ... [I]n addition to the duty to exercise ordinary care there are also duties imposed by statute, and that if they found that a person violated any one *of the following statutes or **federal regulations,*** and *that the violation was the direct cause of the injury,* then such violation in and of itself would make such person negligent.... [Bold added. Italics in original.]

The instruction given in the cause contained references to **federal motor carrier safety regulations.** In *Covel,* we determined that **there was no prejudicial misstatement of law and no fundamental error in the instructions given on negligence per se.** Such a position was adopted as early as 1984 in *Woodis v. OG & E Co.,* 1985 OK 62, 704 P.2d 483 when the Court determined that violation of a national safety electric code constituted negligence per se.

¶ 15 We have long recognized that validly promulgated and executed regulations have the full force and effect of law[19] as do administrative rules which are binding expressions of lawmaking powers.[20] These rules and regulations, enacted by administrative agencies and boards pursuant to the powers delegated to them, **are highly material and relevant to the issue of the applicable standard of care and its alleged breach.**[21]

¶ 16 The Court of Civil Appeals has held in three cases that federal regulations would not support a claim for negligence per se. In *Claborn v. Plains Cotton Cooperative Ass'n,* 2009 OK CIV APP 39, 211 P.3d 915, the appellate court held that the cooperative could not be held negligent per se for a violation of the Occupational Safety and Health Administration (OSHA) regulation where the relationship of employee/employer did not exist with the plaintiff. It did so on grounds that the plain language of OSHA regulations at issue directed employers to act in certain ways to protect employees. Similar reasoning was in the works in *Rosson v. Coburn,* 1994 OK CIV APP 25, 876 P.2d 731 wherein the Court of Civil Appeals refused to acknowledge a claim based on negligence per se when a physician allegedly violated Medicaid statutes by receiving Medicaid funding for performing a sterilization procedure on an underage female. In that instance, it was determined that the Medicaid statutes did not afford protection to individuals but merely established a national policy prohibiting sterilization of those under the age of twenty-one (21) years. In *Christian v. First Capital Bank,* 2006 OK CIV APP 128, 147 P.3d 908, the appellate court determined that a federal regulation regarding interest on agricultural loans did not provide customers with a cause of action against their bank.

¶ 17 *Claborn, Rosson,* and *Christian* do not bear the imprimatur of this Court. At best, they are of only persuasive value.[22] Each of the opinions appears to be factually distinct from this cause. Nevertheless, to the extent that any or all of these opinions conflict with our holding herein that violation of a federal regulatory scheme will support a claim of negligence per se, they are expressly overruled.

**18.** *Jones v. Oklahoma Natural Gas Co.,* 1994 OK 89, ¶ 0, 894 P.2d 415. See also, *Busby v. Quail Creek Golf & Country Club,* see note 15, supra.

**19.** *Hoar v. Aetna Casualty & Surety Co.,* 1998 OK 95, ¶ 12, 968 P.2d 1219.

**20.** *McClure v. ConocoPhillips Co.,* 2006 OK 42, ¶ 17, 142 P.3d 390; *Cox v. Dawson,* 1996 OK 11, ¶ 18, 911 P.2d 272.

**21.** *Johnson v. Hillcrest Health Center, Inc.,* 2003 OK 16, ¶ 14, 70 P.3d 811.

**22.** Opinions released for publication by order of the Court of Civil Appeals are persuasive only and lack precedential effect. Rule 1.200, Supreme Court Rules, 12 O.S.2011, Ch. 5, App. 1; 20 O.S.2011 §§ 30.5 and 30.14.

¶ 18 b) **The existence of a provision in federal law providing that all enforcement proceedings "shall be by and in the name of the United States" does not prohibit a state law claim for negligence per se based on violation of the federal regulation.**

██ ¶ 19 Sulzer argues that because the FDCA regulations relating to medical devices do not contain a provision allowing private individuals to bring tort claims for their enforcement, they cannot support a negligence per se claim. The manufacturer insists that recognizing such a claim would be contrary to expressed legislative intent providing that "all such proceedings for the **enforcement, or to restrain violations ... shall be by and in the name of the United States.**" [Emphasis supplied.] [23] We agree that, pursuant to Oklahoma jurisprudence, the mandatory language [24] of the statute requires that all actions for **enforcement** be maintained by the federal government. [25] On first blush it would appear that Sulzer's arguments have merit. Nevertheless, Howard's assertion that the lack of a provision allowing private enforcement is irrelevant to his negligence per se claim arising from the alleged violation of the GMP warrants a closer look. The patient contends that **he does not seek to enforce the federal statute but to base his theory of recovery on Sulzer's failure to follow the federal regulation** requiring the removal of manufacturing materials from his knee implant prior to its having been placed in his body. We find the patient's contentions persuasive.

¶ 20 We refused to recognize a private right of action for the prosecution of a consumer protection claim in *Holbert v. Echeverria,* 1987 OK 99, 744 P.2d 960. In so doing, the Court was particularly impressed with the legislative language placing the power to seek redress of the Oklahoma Consumer Protection Act (Consumer Protection Act), 15 O.S.2011 § 751, *et. seq.,* in the hands of the Attorney General or a district attorney. Subsequently, the Legislature amended subsection A of § 761.1 to give a private right of action for damages to aggrieved consumers. [26]

¶ 21 We took a second look at the Consumer Protection Act in *Walls v. American Tobacco Co.,* 2000 OK 66, 11 P.3d 626 when smokers attempted to sue cigarette manufactures for civil penalties under subsection C of § 761.1, amended in 1994, providing for the collection of civil penalties of not more than ten thousand dollars ($10,000.00) per violation of the consumer protection act. The Court took the position that the smokers could not collect the penalties for violation provided therein because of the express legislative language of the section. It provided that "[for] the purposes of this section, the district court issuing an injunction shall retain jurisdiction, and in such cases, the Attorney General, acting in the name of the state, or the district attorney may petition for the recovery of civil penalties." [27]

---

23. Title 21 U.S.C. § 337, see note 2, supra.

24. It is correct that the word "shall" is ordinarily interpreted as implying a command or mandate and that "may" generally denotes permissive or discretional authority, we have held that a directory rather than mandatory construction may be given to the work "shall" upon a finding of strongly persuasive contrary legislative intent. *State ex rel. Oklahoma Bar Ass'n. v. Mothershed,* 2011 OK 84, ¶ 62, 264 P.3d 1197; *Woods Development Co. v. Meurer Abstract & Title Co.,* 1985 OK 106, ¶ 11, 712 P.2d 30.

25. We note that in *Walls v. American Tobacco Co.,* 2000 OK 66, 11 P.3d 626 we determined that as long as the Oklahoma Consumer Protection Act contained no private right of action and a provision providing that the Attorney General, acting in the name of the state, or the district attorney had the authority to sue for a monetary award, individual plaintiffs could not maintain an action to recover.

26. Title 15 O.S. Supp.1988 § 761.1(A) providing in pertinent part:

"The commission of any act or practice declared to be a violation of the Consumer Protection Act shall render the violator liable to the aggrieved consumer for the payment of actual damages sustained by the consumer and costs of litigation including reasonable attorney's fees, and the aggrieved consumer shall have a private right of action for damages ..."

27. Title 15 O.S. Supp.1994 § 761.1(C) providing:

"Any person who is found to be in violation of the Oklahoma Consumer Protection Act in a civil action or who willfully violates the terms of any injunction or court order issued pursuant to the Consumer Protection Act shall forfeit and pay a civil penalty of not more than Ten Thousand

¶ 22 In *State of Oklahoma ex rel. Oklahoma Bar Ass'n v. Mothershed*, 2011 OK 84, ¶ 80, 264 P.3d 1197, we refused to allow an individual to proceed in a common-law version of *qui tam* action to compel the prosecution of alleged professional misconduct and an investigation of the Bar Association. In so doing, the Court relied upon *Bass Angler Sportsman Soc. v. United States Steel Corp.*, 324 F.Supp. 412 (S.D.Ala.1971), *aff'd*, 447 F.2d 1304 (5th Cir.1971) quoting the principle that:

> [E]ven where some statutory language seems to grant a private right of action, **if the same or a related statute also clearly places enforcement in the hands of governmental authorities the right of action is exclusively vested in such governmental authority.** [Emphasis provided.]

¶ 23 The cases discussed herein are not the only causes in which we have determined that where a statute expressly places the right of prosecution in a public entity, there can be no intent to create a private right of action.[28] Nevertheless, in each of these cases, **the plaintiff sought to obtain recovery through enforcement of the particular regulatory scheme.**

¶ 24 The language of 21 U.S.C. § 337 provides that all actions to enforce violations of the FDCA "shall be by and in the name of the United States." There is little question that, under this Court's jurisprudence, **Howard would have no authority to bring an enforcement action based on the violation of a federal regulation promulgated under the FDCA.** Nevertheless, while **Howard** seeks to show violation of 21 C.F.R. § 820.70(h),[29] *i.e.* requiring removal of manufacturing materials from his implant, **he does not claim that he should be entitled to bring a private action under the FDCA.**

¶ 25 The United States Supreme Court determined in *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008), that the MDA would pre-empt a jury determination that the FDA-approved labeling for a pacemaker violated a state common-law requirement for additional warnings. It did so based on grounds that such a requirement would be "different from, or in addition to" the federal requirements imposed for medical device labeling. However, the Supreme Court also acknowledged that **the Medical Device Amendments to the FDCA, allowing for such preemption, would not prevent a state from providing a damages remedy for claims premised on violation of FDCA regulations.** The high court did so in recognition that **such state duties parallel, rather than add to, federal requirements.**

¶ 26 **The situation described in *Medtronic* as a "parallel claim" which should be allowed to proceed is precisely the situation presented here.**[30] Howard does not seek, in filing his action based on negligence per se, to hold Sulzer to some new or higher requirement not anticipated by federal law. Rather, the patient's claim is based on allegations that the manufacturer did not follow the GMP requiring the removal or limiting of manufacturing materials to the extent the

---

Dollars ($10,000.00) per violation, in addition to other penalties that may be imposed by the court, as the court shall deem necessary and proper. For the purposes of this section, the district court issuing an injunction shall retain jurisdiction, and in such cases, the Attorney General, acting in the name of the state, or a district attorney may petition for recovery of civil penalties."

**28.** See, *Walker v. Chouteau Lime Co., Inc.*, 1993 OK 35, 849 P.2d 1085 [No private cause of action against insurer who violates provisions of Unfair Claim Settlement Practices Act where the power to regulate was expressly given to the Insurance Commissioner.].

**29.** 21 C.F.R. § 820.70(h), see note 4, supra.

**30.** See, *Medtronic, Inc. v. Lohr*, see note 10, supra, providing that nothing denies states the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements. In *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005), the Supreme Court explained that a state cause of action that seeks to enforce a federal requirement does not impose a requirement that is different from, or in addition to, requirements under federal law. See also, *Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir.2010), *cert. denied*, — U.S. —, 132 S.Ct. 498, 181 L.Ed.2d 346 (2011) [FDCA did not preempt tort claims against medical device manufacturer because state tort duty breached was parallel to FDA regulations promulgated under the Act.].

material would not adversely affect the device's quality.[31]

¶ 27 The United States Court of Appeals for the Sixth Circuit (Sixth Circuit) would have allowed the patient's suit to proceed. In an unpublished opinion, it held that Howard's negligence per se claim was not preempted by the amendments to the FDCA.[32] Other courts have taken similar stances allowing private tort claims alleging FDCA violations to proceed. In *Allen v. Delchamps, Inc.*, 624 So.2d 1065 (Ala.1993), the court agreed that there is no private cause of action for civil damages under the FDCA. However, it concluded that the **plaintiffs were not suing directly under the FDCA or its accompanying regulations.** Rather, the court perceived that the plaintiffs **relied on the regulations to establish a duty or standard of care.** Therefore, the Alabama court determined that summary judgment could not be supported on the basis that the FDCA provided no private cause of action for damages.

¶ 28 The Seventh Circuit Court of Appeals held that, to the degree tort claims could be construed to allege that a defendant failed to meet the standards set forth in the government's approval process, the claims were not pre-empted. It reasoned that **a state judgment premised on the truth of the allegations, set up no requirement different from or in addition to those established by the FDCA.**[33]

¶ 29 Although the federal court found a lack of evidence to support a prima facie case for the patients' claims in *Valente v. Sofamor, SNC*, 48 F.Supp.2d 862 (E.D.Wis.1999), it analyzed the claim of negligence per se in light of the Supreme Court's decision in *Medtronic v. Lohr*, 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). *Lohr* held that a claim that the defendants violated FDCA regulations was not preempted by the MDA. In its analysis, the federal court quoted the Supreme Court's reasoning that **"the presence of a damages remedy does not amount to the additional or different 'requirement' that is necessary under the statute; rather, it merely provides another reason for manufacturers to comply with existing 'requirements' under federal law."** The *Valente* court concluded that Congress intended to impose liability on FDCA violators through state common law claims when such claims parallel federal requirements as in an action for negligence per se. Furthermore, relying on the Supreme Court's pronouncements in *Lohr*, **the federal court noted that Congress clearly intended that the MDA was enacted to protect the safety of those who use medical devices, inferring intent that the statute be used as a basis for civil liability under state common law.** Finally, the federal court opined that, if causation could be shown, a negligence per se claim would lie against the defendants.

¶ 30 There is no unanimity in the courts which have addressed the issue of whether negligence per se claims should be allowed to proceed under the FDCA. This is demonstrated by the federal district court's ruling herein in which the Northern District determined that we would not acknowledge Howard's negligence per se claim because he was not a member of the class intended to be protected by the federal regulations.[34] While a substantial number of jurisdictions allow claims based on the violation of federal requirements denoted as "parallel claims," [35]

---

31. Title 21 C.F.R. § 820.70(h), see note 4, supra.

32. *Howard v. Sulzer Orthopedics, Inc.*, see note 9, supra.

33. *Mitchell v. Collagen Corp.*, 126 F.3d 902 (7th Cir.1997).

34. *Howard v. Sulzer Orthopedics, Inc.*, 796 F.Supp.2d 1305 (N.D.Okla.2011).

35. *Stengel v. Medtronic, Inc.*, 704 F.3d 1224 (9th Cir.2013) [MDA did not preempt failure to warn claim]; *Bass v. Stryker Corp.*, 669 F.3d 501 (5th Cir.2012) [MDA preempted negligence claims to

extent they were premised on failure to warn, but negligent manufacturing claims survived.]; *Hughes v. Boston Scientific Corp.*, 631 F.3d 762 (5th Cir.2011) [Invoking negligence per claim to support state negligence claim parallel to federal requirements is not expressly or impliedly preempted.]; *Bausch v. Stryker Corp.*, see note 30, supra [Patient's claims alleging that the medical device was "adulterated" were not impliedly preempted by MDA.]; *Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272 (11th Cir.2002) [Presuming Georgia law permits a claim for negligence per se for violation of the FDCA.]; *Gomez v. Saint Jude Medical Daig Div., Inc.*, 442 F.3d 919 (5th Cir. 2006) [Claims not preempted to extent patient

others determine that even those claims are preempted.[36] Nevertheless, even courts recognizing that no private cause of action for civil damages exists under the FDCA, allow private actions where parties rely on the regulations themselves to establish a duty or standard of care.[37]

¶31 We align ourselves with those jurisdictions which would allow a negligence

---

**36.** alleged that device was defectively manufactured because it did not comply with FDA-approved specifications.]; *Talley v. Danek Med., Inc.*, 179 F.3d 154 (4th Cir.1999) [In cause were negligence per se based on violation of the FDCA, liability in tort differs in that plaintiff must still show how statute dictates standard of care and prove other elements of negligence.]; *White v. Stryker Corp.*, 818 F.Supp.2d 1032 (W.D.Ky.2011) [MDA does not preempt state-law claims premised on violation of FDA regulations.]; *Orthopedic Equip. Co. v. Eutsler*, 276 F.2d 455, 79 A.L.R.2d 390 (4th Cir.1960) [Misbranding of surgical nail could be negligence per se under FDA statute prohibiting "misbranding."]; *Rollins v. St. Jude Medical*, 583 F.Supp.2d 790 (W.D.La.2008) [State was not preempted from providing a damages remedy for claims premised on violation of FDA regulations.]; *Prohaska v. Sofamor, S.N.C.*, 138 F.Supp.2d 422 (W.D.N.Y.2001) [Cause of action exists under negligence per se when the underlying claim is for misbranding or otherwise illegally omitting product warnings required by FDCA.]; *Valente v. Sofamor, S.N.C.*, 48 F.Supp.2d 862 (E.D.Wis.1999) [Would allow negligence per se claim if had evidential support of causation as negligence per se based on violation of FDCA regulation parallels federal requirements.]; *Wutzke v. Schwaegler*, 86 Wash.App. 898, 940 P.2d 1386 (1997), *review denied*, 134 Wash.2d 1003, 953 P.2d 96 (1998) [PMA process established by FDCA did not establish additional or different requirements specific to medical devices, and thus were not preempted under MDA.]; *Montoya v. Mentor Corp.*, 122 N.M. 2, 919 P.2d 410 [MDA to FDCA did not preempt common-law products liability claim against manufacturer where product was class III device.]. See also, *Gelber v. Stryker Corp.*, 788 F.Supp.2d 145 (S.D.N.Y.2011) [Manufacturing defect claims were not prohibited by MDA where allegations included claim that hip replacement had excessive levels of manufacturing residue left on device but did not allow plaintiff's negligence claim to proceed.]; D. Frank–Jackson, "The Medical Device Federal Preemption Trilogy: Salvaging Due Process for Injured Patients," 35 S.IllU.L.J. 453 (2011) [Emphasizing that the failure to recognize a cause of action for individuals injured by Class III medical devices is "to blatantly ignore over a century of well-settled tort and procedural law precedence in favor of denying due process to those injured by hazardous devices."]; Federal Pre-emption of State Common-law Products Liability Claims Pertaining to Drugs, Medical Devices, and Other Health–Related Items, 98 A.L.R.Fed. 124 (1990).

**36.** *In re: Medtronic, Inc., Sprint Fidelis Leads Products Liability Litigation*, 623 F.3d 1200 (8th Cir.2010) [MDA preempted patients' failure to warn, defective design, manufacturing defect, and breach of express warranty claims.]; *Cupek v. Medtronic, Inc.*, 405 F.3d 421 (6th Cir.2005), *cert. denied*, 546 U.S. 935, 126 S.Ct. 420, 163 L.Ed.2d 320 (2005) [Negligence per se claim due to failure to comply with FDCA preempted.]; *Kemp v. Medtronic, Inc.*, 231 F.3d 216 (6th Cir. 2000) [Negligence per se claims preempted under MDA.]; *In re: Orthopedic Bone Screw Products Liability Litigation*, 193 F.3d 781 (3rd Cir. 1999) [Allowing negligence per se action to go forward would undermine legislation indicating no private right of action should exist.]; *Gross v. Stryker Corp.*, 858 F.Supp.2d 466 (W.D.Pa.2012) [Complaint failed to state parallel claim for negligence so as to avoid preemption.]; *In re Trasylol Products Liability Litigation*, 763 F.Supp.2d 1312 (S.D.Fla.2010) [Recognizing that mere congressional intent to preclude a private right of action would not necessarily indicate that Congress intended to preclude a state remedy under theory of negligence per se.]; *Ilarraza v. Medtronic, Inc.*, 677 F.Supp.2d 582 (E.D.N.Y.2009) [Patient's claim of manufacturing defect of pain relief device preempted by MDA to FDCA.]; *Kapps v. Biosense Webster, Inc.*, 813 F.Supp.2d 1128 (D.Minn.2011) [Negligence per se cannot be based on violation of the FDCA.]; *Moore v. Sulzer Orthopedics*, 337 F.Supp.2d 1002 (2004) [MDA to the FDCA preempted plaintiff's action.]; *Blinn v. Smith & Nephew Richards, Inc.*, 55 F.Supp.2d 1353 (M.D.Fla.1999) [No private cause of action for violations of FDCA.]; *Mitaro v. Medtronic, Inc.*, 23 Misc.3d 1122(A), 886 N.Y.S.2d 71 (2009), *aff'd*, 900 N.Y.S.2d 899, 73 A.D.3d 1142 (2010) [Negligence per se claim preempted under statute providing that all proceedings to enforce or to restrain violations of the FDCA are brought by the United States.]; *Osburn v. Danek Medical, Inc.*, 135 N.C.App. 234, 520 S.E.2d 88 (1999), *review denied*, 351 N.C. 359, 542 S.E.2d 215 (2000), *aff'd*, 352 N.C. 143, 530 S.E.2d 54 (2000) [Violation of FDA regulation or requirements does not create private right of action.]; *Friedlander v. HMS–PEP Products, Inc.*, 226 Ga. App. 123, 485 S.E.2d 240 (1997) [All proceedings for enforcement must be brought by United States.]. See also, *In re: Sulzer Orthopedics*, 335 F.Supp.2d 830 (N.D.Ohio 2004) [Elements of fraud claims insufficient to proceed under Oklahoma law.]; J. Beck and J. Valentine, "Challenging the Viability of FDCA–Based Causes of Action in the Tort Context: The Orthopedic Bone Screw Experience," 55 Food & Drug L.J. 389 (2000).

**37.** *Allen v. Delchamps, Inc.*, 624 So.2d 1065 (Ala. 1993); *Grove Fresh Distributors, Inc. v. Flavor Fresh Foods, Inc.*, 720 F.Supp. 714 (N.D.Ill. 1989).

per se claim to proceed.[38] This Court acknowledges the distinction between attempting to enforce a federal regulation and allowing a parallel claim for negligence per se bottomed on violation of the regulation. Such claims have been blessed by the United States Supreme Court in *Riegel v. Medtronic, Inc.*[39] and *Medtronic v. Lohr*[40] distinguishing between attempts to enforce a federal regulation and reliance on the violation of such rules to bring a parallel claim.

## RESPONSE TO DISSENT

¶ 32 The dissent begins by doing what it criticizes the majority for having done: crafting the question certified to answer the issues it perceives will reach the result it prefers.

¶ 33 More exploration is required of the dissent's insistence that the purpose of the federal regulation at issue here is merely a "record keeping" function and asserts that the regulation is too "vague" to serve as a basis for a negligence per se claim. When faced with arguments similar to those championed by the dissent as to the purpose of the Medical Devices Act, the Seventh Circuit Court of Appeals relied on the Sixth Circuit's rejection of such an argument **in this very case.**[41] In *Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir.2010), the appellate court stated in pertinent part:

> Like the Sixth Circuit in *Howard,* we do not see a sound legal basis for defendants' proposal to distinguish between general requirements and "concrete, device-specific" requirements.... [F]ederal law is clear: for manufacturers of Class III medical devices, the Quality System

Regulations and Current Good Manufacturing Practices adopted by the FDA under its delegated regulatory authority are legally binding requirements ... "The failure to comply with any applicable provision in this part [of the regulations] renders a device adulterated under section 501(h) of the act. Such a device, as well as any person responsible for the failure to comply, is subject to regulatory action...." [Emphasis supplied.]

Defendants' proposed distinction between concrete, product-specific requirements and more general requirements would also leave injured patients without any remedy for a wide range of harmful violations of federal law. The FDA regulations contain many requirements that are not concrete or product-specific, yet which are obviously vital to producing safe and effective medical devices. For example, the regulations require each manufacturer to "establish and maintain procedures to prevent contamination of equipment or product by substances that could reasonably be expected to have an adverse effect on product quality," 21 C.F.R. § 820.70(e), and to "establish and maintain procedures for the use and removal" of manufacturing material (such as lubricants or abrasives, or cleaning and disinfectant agents) "to ensure that it is removed or limited to an amount that does not adversely affect the device's quality." 21 C.F.R. § 820.70(h). **If a patient were harmed by an implanted hip replacement system that was contaminated, for example, by a production worker's blood or mucus or by a lubricant or abrasive that caused an infection**

---

**38.** This Court has adopted a three-part test for determining whether a private right of action may be implied from a regulatory statute. Pursuant to our opinion in *Holbert v. Echeverria*, 1987 OK 99, 744 P.2d 960, the factors to be considered are whether: 1) the plaintiff is one of the class for whose especial benefit the statute was enacted; 2) there is some explicit or implicit legislative intent suggesting the desire to create a private remedy and not to deny one; and 3) implying a remedy for the plaintiff would be consistent with the underlying purposes of the legislative scheme. The opinions cited in fn. 36, supra, demonstrate that the federal regulation herein meets all three of *Holbert*'s requirements.

**39.** See, ¶ 25, supra.

**40.** See, ¶ 29, supra.

**41.** *Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir.2010) providing in pertinent part:

"... The Sixth Circuit has rejected this approach. See *Howard*, 382 Fed.Appx. at 440 (reversing summary judgment on preemption grounds, concluding that the Current Good Manufacturing Practices are 'not so vague as to be incapable of enforcement.')...."

after implantation, that contamination would present a substantial claim for violating requirements that are not "concrete" and "product-specific," yet which surely are essential for the manufacture of safe and effective medical devices for implantation in the human body.** [Emphasis provided.]

¶34 Most concerning is that the dissent seeks to be the "fact finder," a function which lies at the trial level and not with this Court. It would determine that Howard's reliance on the federal regulation is too tenuous to convince a reasonable person that the manufacturer's failure to properly follow the federal regulation at issue caused his injury. This is not the role of an appellate court. Even recognizing that there is a possibility that a jury deciding the common law claim might apply requirements more stringently than the FDA intended, the Seventh Circuit refused to engage in a question that it found to present a "slippery slope" of whether a distinction could be drawn under the federal regulation between "concrete" and "product-specific requirements." Instead, it left those fact issues where we have done, in the realm of the fact-finder who will determine whether there was a violation which would support an award, **something upon which we expressly refuse to comment or speculate.**

## CONCLUSION

▮▮▮ ¶35 Our determination that Howard should be allowed to utilize a negligence per se claim based upon violation of the federal regulation does not guarantee recovery of damages. Instead, we emphasize that negligence per se does not equate to liability per se. Simply because the law may presume negligence from a person's violation of the federal regulation does not mean that the law presumes that such negligence was the proximate cause of the harm inflicted.[42] Here, to prevail on a claim for negligence per se, the patient must not only demonstrate violation of the regulation but also that the violation

caused his injury along with the extent to which the injury may support an award of damages.[43]

## CERTIFIED QUESTION ANSWERED.

COLBERT, C.J., REIF, V.C.J., KAUGER, WATT, EDMONDSON, COMBS, JJ., concur.

WINCHESTER, TAYLOR, GURICH, JJ., dissent.

GURICH, J., with whom WINCHESTER, J. joins, dissenting.

¶1 The Tenth Circuit certified the following question to this Court:

Does Oklahoma recognize a claim for negligence per se based on an alleged violation of 21 C.F.R. § 820.70(h), a federal regulation promulgated pursuant to the Medical Device Amendments to the Food, Drug, and Cosmetic Act, even though those enactments do not allow private rights of action?

In explaining its reasons for certifying this question, the Tenth Circuit pointed to three areas where Oklahoma law appears to be ambiguous: 1) Does Oklahoma law allow a claim for negligence per se based on an alleged violation of a federal regulation rather than a statute? 2) Does Oklahoma law bar a claim for negligence per se when the statute in question lacks a private right of action? and 3) Is 21 C.F.R. § 820.70(h) too ambiguous, under Oklahoma law, to support a claim for negligence per se? *See* Certification of Question of State Law, at 7–9 (July 3, 2012).

¶2 My interpretation of the certified question and my understanding of the issues presented by the Tenth Circuit leads me to the conclusion that Oklahoma law does not recognize a claim for negligence per se based on an alleged violation of 21 C.F.R. § 820.70(h) regardless of whether the Medical Device Amendments to the Food, Drug, and Cos-

---

**42.** *Graham v. American Cyanamid Co.*, 350 F.3d 496 (6th Cir.2003), *cert. denied*, 541 U.S. 990, 124 S.Ct. 2040, 158 L.Ed.2d 495 (2004).

**43.** *Ohio Casualty Ins. Co. v. Todd*, 1991 OK 54, ¶9, 813 P.2d 508; *Hampton v. Hammons*, 1987

OK 77, ¶12, 743 P.2d 1053. It has previously been determined that patients such as Howard were intended to be protected by the GMP at issue here. See, ¶29, supra.

metic Act allow for a private right of action. Therefore, I must respectfully dissent from today's decision.[1]

¶ 3 The Defendant correctly points out that this Court has never allowed a negligence per se claim to go forward **solely** on an alleged violation of a federal regulation.[2] That's because this Court's negligence per se case law has developed primarily around *violations of Oklahoma state statutes and municipal ordinances*.[3] The Plaintiff relies on *Covel v. Rodriguez*, 2012 OK 5, 272 P.3d 705, and *Woodis v. Oklahoma Gas and Electric Co.*, 1985 OK 62, 704 P.2d 483, to support his position that this Court has allowed negligence per se claims to go forward based on alleged violations of federal regulations.

They do not. In *Covel*, the negligence per se claim was based on alleged violations of regulations under the Federal Motor Carrier Safety Administration[4] **and** violations of the Oklahoma statutes addressing licensing standards and qualifications for commercial drivers.[5] In *Woodis*, although the negligence per se claim was premised on a violation of the National Electrical Safety Code, the National Electrical Safety Code was adopted by the Oklahoma Corporation Commission by order. *Woodis*, 1985 OK 62, ¶ 16, 704 P.2d 483, 486 (citing *Rotramel v. Public Service Co.*, 1975 OK 91, ¶ 5, 546 P.2d 1015, 1017). As such, noncompliance with the code was actually a violation of an order of the Oklahoma Corporation Commission, not a federal

1. I see no reason to rely on cases such as *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008), *Mitchell v. Collagen Corp.*, 126 F.3d 902 (7th Cir.1997), and *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996), all of which are preemption cases that are not dispositive of the issue presented. Everyone agrees that the Sixth Circuit has already decided that the negligence per se claim is not preempted and that decision remains the settled law of the case.

2. The Court of Civil Appeals in two different cases implied that a federal regulation could provide the basis for a negligence per se claim. However, in both of those cases, the COCA found that the Plaintiffs did not fall within the class of persons meant to be protected by the regulations. As such, the negligence per se theories could not go forward. *See Claborn v. Plains Cotton Co-op. Ass'n*, 2009 OK CIV APP 39, ¶ 9, 211 P.3d 915, 919 (holding that because the plain language of the OSHA regulations at issue directed *employers* to act in certain ways to protect *employees*, the trial judge properly rejected the instruction because in that case, the Plaintiff was not an employee of the Defendant); *Rosson v. Coburn*, 1994 OK CIV APP 25, ¶ 28, 876 P.2d 731, 736 (rejecting a negligence per se argument based on violation of the Social Security Act and its implementing regulations because the purpose of the statutes and regulations was not to afford protection to any individuals). While these cases tend to support the majority's holding, the opinion *overrules* these cases to the extent they are inconsistent.

3. *See, e.g., Cornwell v. Union Pacific R.R.*, 2010 WL 3521668 (determining whether Cornwell was negligent per se for failing to follow 47 O.S. 11–701(A)); *Akin v. Mo. Pacific R.R. Co.*, 1998 OK 102, 977 P.2d 1040 (discussing the duty of a motorist approaching a grade crossing under 47 O.S.1991 § 11–701(a)(1)); *Lockhart v. Loosen*, 1997 OK 103, 943 P.2d 1074 (finding a third party could not assert negligence per se based on violation of 63 O.S.1991 § 1–519); *Jones v. Okla. Natural Gas Co.*, 1994 OK 89, 894 P.2d 415 (holding that the question of negligence per se under 63 O.S.1981 § 142.1 et seq., The Underground Facilities Damage Prevention Act, was a question of fact for the jury); *Busby v. Quail Creek Golf and Country Club*, 1994 OK 63, 885 P.2d 1326 (determining that violation of 37 O.S. 1991 § 241 could satisfy the negligence per se factors but that under proper facts a jury could find the violation excusable); *Hamilton v. Allen*, 1993 OK 46, 852 P.2d 697 (finding driver of vehicle was negligent per se under 47 O.S. 11–701(a)(1) and (2) for failing to stop, look, and listen); *Athey v. Bingham*, 1991 OK 82, 823 P.2d 347 (giving an instruction on unavoidable accident under 47 O.S.1981 § 11–310(a) and 47 O.S. 1981 § 11–801(a) and (d) held not to be reversible error); *Ohio Cas. Ins. Co. v. Todd*, 1991 OK 54, 813 P.2d 508 (finding a violation of 37 O.S. 1981 § 537(A)(2) did not amount to negligence per se under the facts); *Hampton By and Through Hampton v. Hammons*, 1987 OK 77, 743 P.2d 1053 (finding material questions of fact on the issue of negligence per se under a *Tulsa city ordinance*); *Boyles v. Okla. Natural Gas Co.*, 1980 OK 163, 619 P.2d 613 (finding that Plaintiff was within the class meant to be protected by the *city ordinance* concerned with injuries occasioned by gas explosions).

4. 49 C.F.R. §§ 383.1; 383.113; 391.11; 391.31; 392.7.

5. 47 O.S. §§ 11–311; 11–801(B)(2); 47 O.S.2004 § 6–101. In *Covel*, in evaluating the jury instructions *as a whole* to determine whether there was reversible error, this Court held that there was no prejudicial misstatement of the law and no fundamental error in the instructions given on negligence per se. 2012 OK 5, ¶ 26, 272 P.3d 705, 716.

regulation.[6]

¶4 I cannot join today's opinion because the holding is too broad. In my view, any expansion of the law in this area should be done narrowly and on a case-by-case basis and only when the Plaintiff can prove that he or she is within the class meant to be protected by the regulation and that his or her injury was meant to be prevented by the regulation. The facts of today's case certainly do not warrant an expansion of our negligence per se law. First, for a negligence per se instruction to be proper under Oklahoma law, the terms of a statute must impose *objective standards. See Athey,* 1991 OK 82, ¶8, 823 P.2d at 349. As the Sixth Circuit recognized, 21 C.F.R. § 820.70(h) is ambiguous because it isn't clear from the text of the regulation whether it "requires compliance with a validated cleaning *process,* or whether it also requires a specific *result:* namely, actual removal" of the machine oil.[7] Even though the Sixth Circuit held that the regulation required Sulzer to actually remove the excess machine oil, the regulation does not impose sufficient objective standards to allow the negligence per se claim to go forward *under Oklahoma law.* This issue must be decided before analyzing whether the Plaintiff is within the class of persons meant to be protected by the regulation. In my view, the majority has not addressed this issue and the

Tenth Circuit is free to address the issue when the case goes back.

¶5 Additionally, *without any citation to authority or to the record,* the Plaintiff asserts that "[t]he purpose of this requirement was to protect individuals who receive Sulzer's implants and was designed to prevent the very risks that occurred in this case—damage caused to Dr. Howard because of Sulzer's failure to remove such substances."[8] The majority, in footnote 43, apparently agrees with the Plaintiff's broad, general assertions and finds that "patients such as Howard were intended to be protected by the GMP at issue here." The primary purpose of 21 C.F.R. § 820.70(h), and the GMP's generally, appears to be "recordkeeping." The Supporting Statement for Medical Devices: Current Good Manufacturing Practice, found on the FDA website, states as its justification: "The Food and Drug Administration (FDA) is requesting extension of approval *for information collection requirements* in 21 CFR Part 820."[9] Rather than giving the Plaintiff a free pass on this issue, he should, on remand from the Tenth Circuit, be required to present *some evidence or authority* to the trial court that 21 C.F.R. § 820.70(h) was intended to protect a certain class of individuals of which he is included and that the regulation was intended to prevent a certain type of injury.[10]

---

**6.** *See also Myers v. Mo. Pacific R.R. Co.,* 2002 OK 60, ¶30, 52 P.3d 1014, 1029, where the Plaintiff challenged the trial court's refusal to instruct the jury on negligence per se in relation to the railroad's failure to comply with two statutes requiring a railroad to erect suitable signs of caution and requiring a railroad to maintain its crossings in good condition. This Court found the trial court's refusal to instruct on negligence per se correct. We found that the first statute would have placed before the jury an issue preempted by the Federal Railroad Safety Act and that the second statute was not relevant to the case. *Id.* Even though the Federal Railroad Safety Act was brought up in the case, the actual instruction requested was based on Title 66 of the *Oklahoma* statutes. *Id.* n. 56, 52 P.3d at 1029, n. 56.

**7.** *Howard v. Sulzer Orthopedics, Inc.,* 382 Fed. Appx. 436, 440 (6th Cir.2010). The Sixth Circuit, in both the majority opinion and the dissenting opinion, went beyond the text of the statute and looked to FDA guidance documents to determine the meaning of the regulation.

**8.** Brief in Chief of Appellants Brian C. Howard, M.D., and Suzanne Howard, at 11.

**9.** Food and Drug Admin., OMB No. 0910–0073, Supporting Statement for Medical Devices: Current Good Manufacturing Practice (CGMP), Quality System (Q/S) Regulation, at 1, (updated as of Apr. 27, 2007) (emphasis added) http://www.fda.gov/OHRMS/DOCKETS/98fr/04n–0034–ss00001.pdf.

The description of information collection requirements for 21 C.F.R. § 820.70(h) is listed as follows:
"**21 CFR 820.70(h)-Recordkeeping**
Manufacturers shall establish and maintain procedures for using and removing adverse manufacturing materials."
*Id.*

**10.** The Plaintiff has pointed to nothing in his four appendices that would indicate that this GMP was meant to protect a certain class of individuals or a certain type of injury.

¶ 6 The holding in today's case is not limited to negligence per se claims based on the particular regulation at issue, 21 C.F.R. § 820.70(h). It is not even limited to negligence per claims based on federal regulations under the Food, Drug, and Cosmetic Act. Rather, today's holding is so broadly worded that it allows a plaintiff to allege negligence per se based on a violation of *any* federal regulation. With the thousands of federal regulations from the various federal agencies, an overly broad holding will inevitably lead to unanticipated results. The holding in this case should be limited to the facts disclosed. I respectfully dissent.