**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**December 17, 2024**

**FOR THE TENTH CIRCUIT**

**Christopher M. Wolpert**
**Clerk of Court**

_____

DEBORAH BRADSHAW;
CHRYSTAL ANTAO,

     Plaintiffs - Appellants,

v.

No. 23-5074

AMERICAN AIRLINES, INC.; MESA
AIRLINES, INC.,

     Defendants - Appellees.

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:22-CV-00306-CVE-CDL)**

_____

Stephen P. Gray (Gary L. Richardson, Richardson Richardson Boudreaux,
Tulsa, Oklahoma, with him on the briefs) of Stephen P. Gray & Associates,
Broken Arrow, Oklahoma, for Plaintiffs - Appellants.

J. Craig Buchan (Timothy L. Spencer, McAfee & Taft A Professional
Corporation, Tulsa, Oklahoma, with him on the brief), of McAfee & Taft A
Professional Corporation, Tulsa, Oklahoma, for Defendants - Appellees.

_____

Before **PHILLIPS**, **MORITZ**, and **EID**, Circuit Judges.

_____

**PHILLIPS**, Circuit Judge.

_____

     Deborah Bradshaw and Chrystal Antao (the Passengers), sued American

Airlines and Mesa Airlines (the Airlines), claiming injuries and damages

sustained from what they have alleged was the Airlines' negligent handling of an in-flight emergency.

The primary issue on appeal is whether and to what extent the Federal Aviation Act of 1958 (the Aviation Act), Pub. L. No. 85-726, 72 Stat. 731 (codified as amended at 49 U.S.C. §§ 40101–49105), and the aviation-safety regulations promulgated by the Federal Aviation Administration (the FAA), preempt one element of a common-law negligence claim in Oklahoma—its statutory common-carrier standard of care.

The district court concluded that these federal laws impliedly preempt state law in the field of aviation safety. Even so, under a statutory "savings clause" the court ruled that the Passengers could pursue a state negligence claim using the federal "reckless-or-careless manner" standard of care for aircraft operation. Because the Passengers failed to plead, brief, or raise a genuine issue of material fact of a violation of that federal standard, the court granted the Airlines' motions for summary judgment. We affirm.

## BACKGROUND

In June 2020, the Passengers were aboard a Mesa Airlines flight traveling from Asheville, North Carolina to Dallas, Texas.[1] While en route, the aircraft's

---

[1] Mesa Airlines provides regional airline services for American Airlines under a written agreement requiring that "Mesa shall provide all crews (flight and cabin) and maintenance personnel necessary to operate all flights." Appellant App. at 159 ¶ 3. Mesa "provides its own aircrafts for operation and causes said aircrafts to be inspected, serviced, repaired, overhauled and tested

*(footnote continued)*

2

anti-ice and leak controller malfunctioned, which caused the aircraft's bleed duct to close automatically—a design feature that prevents aircraft damage and activates without the flight crew's direction.[2] The closure of the bleed duct caused a loss of cabin pressure, resulting in the automatic deployment of the aircraft's oxygen masks and required a rapid descent in altitude.

Captain Omar Aquino piloted the Mesa flight. In responding to the bleed-duct failure and the resultant loss of cabin pressure, Captain Aquino followed the emergency-descent procedures provided for in Mesa's Emergency Procedures Checklist and Quick Reference Handbook, while the flight crew executed the appropriate Emergency Descent Procedure. Mesa's Emergency Procedures Checklist and Quick Reference Handbook delineate the procedures to be followed during a bleed-duct failure, including for emergency descents. The FAA and the aircraft's manufacturer, Bombardier, had approved these procedures.

---

in accordance with the Agreement and Mesa's FAA approved maintenance program." *Id.* ¶ 4.

[2] The aircraft "has an automatic cabin pressurization system that operates off bleed air from the left and right engines." Appellant App. at 138. "The loss of a [bleed] duct's normal operation is alerted to the pilot via a warning light on the pilot's condition monitoring panel as well as a continuous repetitive chime and aural voice that annunciates 'Bleed Air Duct.'" *Id.* "[S]everal computerized components within the bleed system, in particular the anti-ice and leak controller, if malfunctioning, can cause the illumination of the respective left or right bleed duct lights." *Id.*

Abiding the procedures, First Officer Elio Nunez "located and communicated all necessary checklists" while Captain Aquino "continued to fly the aircraft through a controlled emergency descent, determined the flight path and locale for landing, and communicated the emergency to air traffic control." Appellant App. at 101 ¶ 14. Once the aircraft had fallen to 10,000 feet[3] and "Captain Aquino was able to ensure the descent was under complete control," he "announced to the passengers that the aircraft [had] lost cabin pressure, was operating safely, and was being diverted to land in Atlanta." *Id.* at 102 ¶¶ 15–16. After landing in Atlanta, the "aircraft mechanic confirmed the failure of the bleed system, which explains why the aircraft lost pressurization." *Id.* at 105 ¶ 40.

In June 2022, the Passengers sued the Airlines in the District Court of Tulsa County, Oklahoma, pleading a single claim for "Negligence/Negligent Infliction of Emotional Distress."[4] Appellant App. at 3. As to Mesa, the

---

[3] According to the Airlines' unrebutted expert testimony, "[i]n the case of an uncontrolled depressurization, the crew will want to descend immediately to an altitude at which they and the passengers can breathe without supplementary oxygen - usually given as below 10,000 [feet]." Appellant App. at 146. At that altitude, the reduced levels of oxygen have "little effect on aircrew and healthy passengers." *Id.* at 145. But as the altitude increases, the effect becomes "progressively more pronounced." *Id.*

[4] On appeal, the Passengers have not pursued their claim for negligent infliction of emotional distress. In Oklahoma, "[t]he plaintiff must be a victim, not a bystander, directly involved in the incident, damaged from directly viewing the incident[,] and a close family relationship must exist between the plaintiff and the party whose injury gave rise to plaintiff's mental anguish."

*(footnote continued)*

4

Passengers assert that Captain Aquino was negligent in two ways: (1) by "fail[ing] to advise passengers of an immediate considerable threat to passengers" and (2) by "not descend[ing] to the highest safest altitude, rather he descended to the lowest altitude possible." *Id.* at 188. And as to American, the Passengers assert negligence in its "fail[ing] to provide medical personnel at the airport after having been informed of the in-flight emergency." *Id.* at 216. Because of the alleged negligence, Bradshaw claims injuries including "high blood pressure, asthma, and panic attacks." *Id.* at 102 ¶ 18. Antao claims injuries including "muscle soreness, joint pain, 'decompression sickness,' panic attacks, anxiety/depression, and tinnitus." *Id.* at 102 ¶ 19. After landing, the Passengers neither notified the Airlines of their alleged injuries nor requested any medical attention.

The Airlines removed the case to federal court on diversity-of-citizenship grounds and later moved for summary judgment. The district court granted the Airlines' motions for summary judgment. It concluded that federal law impliedly preempted Oklahoma law in the field of aviation safety. But the court recognized under a statutory savings clause that the Passengers could proceed with a state negligence claim, subject to showing a violation of the federal

---

*Bradshaw v. Am. Airlines, Inc.*, 22-CV-0306, 2023 WL 3807029, at *3 n.5 (N.D. Okla. June 2, 2023) (alterations in original) (quoting *Ridings v. Maze*, 414 P.3d 835, 838 (Okla. 2018)). Because the Passengers did not allege "any familial or other close relationship existed between them, or between either of them and any other person injured on the flight," the district court dismissed their claim for negligent infliction of emotional distress. *Id.*

standard of care for operation of aircraft and not the standard of care provided by Oklahoma's state common-carrier statute. *Bradshaw v. Am. Airlines, Inc.*, 22-CV-0306, 2023 WL 3807029, at *4 (N.D. Okla. June 2, 2023) (citing *U.S. Airways v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010)).

Reviewing the summary-judgment submissions, the court found not "even an iota of evidence" that the Airlines had violated any federal aviation regulation. *Id.* at *6. To the contrary, the court found that "[e]verything in the record demonstrates that [the Airlines'] actions were wholly compliant with the relevant federal regulations and their own procedures."[5] *Id.* Thus, for summary-judgment purposes, the court concluded that the Airlines had "satisfied the applicable standard of care," that Passengers had raised no genuine issue of material fact otherwise, and that the Airlines were entitled to summary judgment.[6] *Id.*

---

[5] In addition, as to American, the district court determined that the Passengers' accusations were "entirely without merit" because "American did not operate the flight, so it was not involved with the emergency situation at all." *Bradshaw*, 2023 WL 3807029, at *6.

[6] Understandably, the district court was uncertain whether the Passengers based their claim on negligence or instead on negligence per se. *Bradshaw*, 2023 WL 3807029, at *3. In Oklahoma, negligence per se treats a statutory duty as a common-law duty for a negligence claim. *Howard v. Zimmer, Inc.*, 299 P.3d 463, 467 (Okla. 2013). But because the federal regulations provide the governing standard of care for state claims based on aviation safety, the court concluded that a violation of federal regulations would breach the duty of care owed under state claims for negligence or negligence per se. *Bradshaw*, 2023 WL 3807029, at *3.

On appeal, the Passengers contend that the district court erred in three ways. First, they assert that the district court erred by applying express preemption under the Airline Deregulation Act (ADA)[7] (even though the district court did not do so but instead found implied indemnity under the Aviation Act and thus applied its savings clause to afford Passengers a state tort claim). Indeed, the bulk of the Passengers' appellate briefing concerns the phantom ADA ruling. But in what will become important, Passengers embedded in their pages-long ADA argument three sentences referencing Oklahoma's statutory common-carrier standard of care. Second, the Passengers dispute the district court's summary-judgment ruling that they failed to raise a genuine issue of material fact about a breach of a federal aviation statute or regulation. Third, they contend that the district court erred by reading their complaint as raising a single claim. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[7] Congress enacted the Airline Deregulation Act as an amendment to the Aviation Act in 1978. Airline Deregulation Act of 1978, Pub L. No. 95-504, 92 Stat. 1705. Unlike the aviation-safety focus of the Aviation Act, the Deregulation Act's aim was to "promote 'efficiency, innovation, and low prices' in the airline industry through 'maximum reliance on competitive market forces and on actual and potential competition.'" *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 280 (2014) (quoting 49 U.S.C. § 40101(a)(6), (a)(12)(A)). And that Act included an express preemption provision to "ensure that the States would not undo federal deregulation with regulation of their own." *Id.* (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992)).

**STANDARD OF REVIEW**

We review preemption issues de novo. *BNSF Ry. Co. v. Hiett*, 22 F.4th 1190, 1193 (10th Cir. 2022). Likewise, we review de novo "the district court's grant of summary judgment . . . applying the same legal standard as the district court." *U.S. Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**DISCUSSION**

The Supremacy Clause empowers Congress to enact federal laws that preempt state laws. *Arizona v. United States*, 567 U.S. 387, 399 (2012) ("The Supremacy Clause provides a clear rule that federal law 'shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.'" (quoting U.S. Const. art. VI, cl. 2)). But any preemption inquiry begins with the presumption that federal law does not override "the historic police powers of the States," without the "clear and manifest" intent of Congress. *Id.* at 400 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). This makes congressional intent "the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). Congress's intent to preempt state law can be shown "through a statute's express language" or

8

implied "through its structure and purpose." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008). The Aviation Act does not expressly preempt state regulation of air safety, so any preemption would need to be implied.

Field preemption is one variety of implied preemption. It exists where "a framework of regulation" of a field is "so pervasive" that it leaves no space for state supplementation or where the federal interest is "so dominant" that the existence of a federal scheme can "be assumed to preclude enforcement of state laws on the same subject." *Arizona*, 567 U.S. at 399 (quoting *Rice*, 331 U.S. at 230, and citing *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990)); *accord O'Donnell*, 627 F.3d at 1324–25.

As mentioned, the Passengers maintain that Congress did not expressly preempt state law in the field of aviation safety under the Airline Deregulation Act. But the record refutes the Passengers' claim that "[t]he district court[] determine[d] that the Airline Deregulation Act ("ADA") preempted APPELLANT's state law remedies." Op. Br. at 6. In fact, the district court never mentioned express preemption under the ADA. Instead, the district court's ruling relied on the Aviation Act and its associated regulation, 14 C.F.R. § 91.13, which provides a "careless or reckless manner" standard of care. The Airlines repeatedly point out the Passengers' errant course. Response Br. at 11–12 (noting that the Aviation Act and its regulations govern aviation safety, a separate concern from the ADA's coverage of "the limited area of airline prices, routes or services"). Neither in the district court nor on appeal

9

have the Airlines sought express preemption under the ADA. In view of this,

we have no reason to address the Passengers' lengthy briefing on the ADA.

In their statement of issues in their appellate briefing, the Passengers do

not contend that the district court erred by ruling that the FAA regulation at 14

C.F.R. § 91.13 preempted the Oklahoma "common carrier" standard of care.

Instead, again, the Passengers argue that the ADA doesn't preempt the state

standard. And as stated, the Passengers do not argue how § 91.13 applies to

their claim. Instead, the Passengers drop this single chunk on the Oklahoma

standard of care into a paragraph arguing for relief under the ADA:

> Further, Defendants should be held to Oklahoma's statutory standard of care to common carriers. "A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." 13 O.S. § 32. A common carrier is defined as an entity that holds itself out to the public as engaged in the business of transporting persons from place to place for compensation and that offers its service to the public in general. 13 A.Jur.2d Carriers § 2 at 560.

Op. Br. at 22. This failure to address the federal standard of care carries

over from the Passengers' effort in the district court. There, the

Passengers never even cited § 91.13 in their Second Amended Petition

for Negligence.[8]

---

[8] On appeal, the Passengers dispute their failure to assert a violation of federal regulations, relying on their reference in their Second Amended Petition for Negligence to the Airlines' supposed negligence per se arising from "their violations of applicable local, and state statutes, laws and regulations." The

(*footnote continued*)

Though a stretch, we will treat the Passengers as having raised the issue of whether the district court erred by preempting Oklahoma's common-carrier standard of care with § 91.13's "careless or reckless manner" standard of care. The answer depends on the meaning of the Aviation Act's savings clause, which reads as follows: "Additional Remedies.—A remedy under this part is in addition to any other remedies provided by law." 49 U.S.C. § 40120(c).

In interpreting this language, the parties turn to two cases from our circuit: *Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438 (10th Cir. 1993) and *US Airways v. O'Donnell*, 627 F.3d 1318 (10th Cir. 2010). The Passengers argue that in these two cases "the Tenth Circuit appears to have spoken with different minds about complete preemption of aviation safety-related claims." Op. Br. at 13. We disagree. Instead, we view the two cases as addressing preemption by distinguishing the type of state law involved—a state regulation versus a common-law tort-damages remedy. Importantly, neither case speaks to the issue before us—whether despite the savings clause, § 91.13 preempts Oklahoma's statutory common-carrier standard of care with the federal standard of "careless or reckless manner." Though *Cleveland* and *O'Donnell* do

---

Airlines respond that the Passengers have "failed to allege or establish any violations of any FARs [Federal Aviation Regulations]" as is "required under binding Tenth Circuit precedent in *US Airways*[*, Inc. v. O'Donnell*, 627 F.3d 1318 (10th Cir. 2010)]). Response Br. at 1. The Airlines correctly note that "state, and local statutes, laws, and regulations" do not allege "a violation of a specific FAR and/or the federal general standard of care of reckless or car[e]less operation." *Id.* at 34.

11

not answer this question, they still offer insights. To glean those insights, and to avoid future confusion about the cases, we begin by reviewing them.

## I.    The Disputed Tenth Circuit Cases

In *Cleveland*, a pilot was injured when his airplane struck a van on the runway during takeoff. 985 F.2d at 1440–41. His wife, as conservator of the pilot's estate, sued the airplane's manufacturer, bringing a negligence claim for negligent design (alleging an inadequate field of vision from the rear seat and a lack of a rear-seat shoulder harness). *Id.* at 1441. The manufacturer "assert[ed] a defense that state common law was preempted by the Federal Aviation Act of 1958 and its corresponding regulations." *Id.* at 1440. On appeal, our court noted that "Congress may reserve for the federal government the exclusive right to regulate safety in a given field, yet permit the states to maintain tort remedies covering much the same territory." *Id.* at 1441 (citing *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 253 (1984)). The court noted that the Aviation Act's savings clause[9] "le[ft] in place remedies then existing at common law or by statute" and observed that "[t]ort liability for design defects was established in the law of many states by the late 1950s and had been extended to airplane

---

[9] The version then in effect read as follows: "Nothing contained in this Act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies." *Id.* at 1442 (quoting 49 U.S.C. § 1506). Congress later amended this language to read that "[a] remedy under this part is in addition to any other remedies provided by law." 49 U.S.C. § 40120(c). This revision was not intended to make a substantive change. *See* Pub. L. 103-272, 108 Stat. 745, 1118 (1994) (revising title 49 of the United States Code "without substantive change").

crash cases." *Id.* at 1443 (citations omitted). Declining to find implied field preemption, the court ruled that "it appears through the savings clause that Congress has intended to allow state common law to stand side by side with the system of federal regulations it has developed." *Id.* at 1444.

In *O'Donnell*, the New Mexico legislature enacted the Liquor Control Act in response to a passenger who became intoxicated after buying and drinking alcohol during his flight and caused a fatal automobile accident on his drive home from the airport. 627 F.3d at 1322. A New Mexico state agency later served an airline with a cease-and-desist order directing it "to 'refrain from selling, serving and otherwise dispensing, storing or possessing alcoholic beverages of any kind in the State of New Mexico' without properly complying with the New Mexico Act." *Id.* at 1323. The state agency later declined to extend the airline a temporary license to dispense alcohol, saying that the airline's training did not comply with the Act's requirements. *Id.* In response, the airline filed suit to enjoin New Mexico from regulating "the alcoholic beverage service that airlines provide to passengers on flights." *Id.* at 1321. The airline argued that the ADA "expressly preempts state regulation of airline services, including the alcoholic beverage service provided to passengers on flights." *Id.* at 1323. Alternatively, the airline contended that "federal law impliedly preempts the application of [the Act] to airlines as the application of [the Act] to an airline implicates the field of aviation safety, which federal law

13

regulates to the exclusion of state regulation." *Id.* The district court declined preemption on either ground. *Id.*

Addressing the appeal in *O'Donnell*, this court concluded that "the regulation of an airline's alcoholic beverage service necessarily implicates the field of airline safety." *Id.* at 1325. In assessing field preemption, we noted that "the field of aviation safety 'has long been dominated by federal interests.'" *Id.* (citation omitted). Hearkening back to *Cleveland* and the savings clause in play there, we noted that *Cleveland* recognized that "Congress may reserve for the federal government the *exclusive right to regulate safety* in a given field, yet permit the states to maintain *tort remedies* covering much the same territory." *Id.* at 1326 (quoting *Cleveland*, 985 F.2d at 1441) (emphases added). Then, "[b]ased on the [Aviation Act's] purpose to centralize aviation safety regulation and the comprehensive regulatory scheme promulgated pursuant to the [Aviation Act]," the court concluded "that federal regulation occupies the field of aviation safety to the exclusion of state regulations." *Id.* at 1326. With that, the court concluded that the New Mexico Act's "regulation of an airline's alcoholic beverage service directly implicates the field of aviation safety regulated by federal law." *Id.* at 1327. Thus, federal law impliedly preempted the New Mexico Act. *Id.* at 1329. Because the case did not involve a plaintiff suing for a state common-law tort remedy, the savings clause was not in play.

Neither of these cases answers the question before us—whether the federal standard of care for the operation of aircraft, under 14 C.F.R. § 91.13,

14

preempts the Oklahoma "common carrier" standard of care. To review, § 91.13 provides as follows: "Aircraft operations for the purpose of air navigation. No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." Though not directly on point, *Cleveland* and *O'Donnell* get us part way there. We know from these two cases that federal law impliedly preempts the field of aviation safety subject to application of a savings clause. But the two cases don't tell us whether the federal "careless or reckless manner" standard of care for safe aircraft operation impliedly preempts Oklahoma's "common carrier" standard of care for the Passengers' common-law negligence claim.

Even so, *O'Donnell* does lend support for a conclusion that though the damages remedy for a state negligence claim is saved, the federal standard of care for operation of an aircraft preempts and must be substituted for the state's standard of care. We take a cue from the *O'Donnell* court's favorably citing decisions from other circuits doing just that. We now discuss the four cases favorably cited by *O'Donnell*.

## II.    Circuit Court Decisions Confronting the Issue Now Presented, as Cited in *O'Donnell*

In *Abdullah v. Am. Airlines, Inc.*, airplane passengers sued an airline, raising a negligence claim seeking relief for the severe injuries they sustained after the pilot chose to fly into turbulence without having a crew member notify passengers of the impending danger so they could take steps to protect

15

themselves. 181 F.3d 363, 365 (3d Cir. 1999). The airline defended on implied-preemption grounds. *Id.* at 366. On appeal, the court reviewed the history of Congress's actions to provide aviation safety and ultimately held that "federal law establishes the applicable standards of care in the field of air safety, generally, thus preempting the entire field from state and territorial regulation." *Id.* at 367. Otherwise stated, the court noted that "[b]ecause the legislative history of the [Aviation Act] and its judicial interpretation indicate that Congress's intent was to federally regulate aviation safety, we find that *any* state or territorial standards of care relating to aviation safety are federally preempted." *Id.* at 371. Though "Congress, in enacting the [Aviation Act] and relevant regulations, intended generally to preempt state and territorial regulation of aviation safety," the court acknowledged "that plaintiffs may recover damages under state and territorial remedial schemes."[10] *Id.* at 368. In reaching these conclusions, the court pointed to the "overarching general standard of care under the [Aviation Act] and its regulations" and the savings clause at 49 U.S.C. § 40120(c). *Id.* at 365, 374. So the court did not preempt "state and territorial law remedies" but "only the standards of care for the safe

---

[10] As pertains to the Passengers' ADA argument, we note that the court stated that "[w]e conclude that Congress's intent to preempt state and territorial regulations of air safety is not affected by the language of the ADA." *Id.* at 368.

operation of aircraft." *Id.* at 375. That meant that "state and territorial damage remedies are preserved." *Id.*

In *Greene v. B.F. Goodrich Avionics Systems, Inc.*, a widow sued a helicopter manufacturer for an alleged design defect that led to a crash and for negligently failing to warn of it. 409 F.3d 784, 786 (6th Cir. 2005). Relying on *Abdullah*, the district court ruled that the widow "could not maintain a state-law failure to warn claim because federal law regarding aviation standards preempted any duty imposed by state law." *Id.* at 787, 794.[11] On appeal, the Sixth Circuit "agree[d] with the reasoning in *Abdullah* that federal law establishes the standards of care in the field of aviation safety and thus preempts the field from state regulation." *Id.* at 795. So the court remanded with instructions to enter judgment for the manufacturer and dismiss the case. *Id.*

In *Air Transport Ass'n of America, Inc. v. Cuomo*, the "principal trade and service organization of the United States airline industry" sued for declaratory and injunctive relief against enforcement of the New York State Passenger Bill of Rights (the "PBR"). 520 F.3d 218, 219 (2d Cir. 2008). After losing in the district court, the trade organization obtained a ruling from the appeals court that "the PBR is preempted by the express preemption provision

---

[11] But it allowed the manufacturing-defect claim to go to the jury after rejecting the manufacturer's motion for summary judgment. That issue isn't important to our appeal.

17

of the Airline Deregulation Act of 1978 (the "ADA")[.]" *Id.* at 220. But beyond that, addressing the issue now before us, the Second Circuit stated in dicta that the Aviation Act and its corresponding regulations might also impliedly preempt the PBR, noting that the Aviation Act's purpose was to centralize "power to frame rules for the safe and efficient use of the nation's airspace." *Id.* at 224 (citations omitted). The court cited the same circuit-court cases as had *O'Donnell* in "conclud[ing] that Congress intended to occupy the entire field and thereby preempt state regulation of air safety." *Id.* at 225. Having earlier quoted the federal "general standard of care for operating requirements," 14 C.F.R. § 91.13(a), the court acknowledged that the "savings clause [] specifically preserves these [state tort] actions." *Id.*

Finally, in *Montalvo v. Spirit Airlines*, fourteen plaintiffs sued on negligence claims under California common law for the airlines "failing to warn about the danger of developing deep vein thrombosis and for providing an unsafe seating configuration on domestic flights." 508 F.3d 464, 468 (9th Cir. 2007). On appeal, the Ninth Circuit framed the issue as being whether the Aviation Act and its corresponding regulations preempt state law standards of care on the state-imposed duty to warn.[12] *Id.* The court affirmed the district

---

[12] The court also considered whether the Airline Deregulation Act of 1978 preempted the seating-configuration claim as an economic measure regulating airline prices, routes, and services. *Id.* We do not face such an issue so do not review that part of the decision.

18

court's dismissal of the failure-to-warn claim, reasoning that "[t]he [Aviation Act] and the relevant federal regulations preempt Plaintiffs' failure to warn claim, because the [Aviation Act] preempts the entire field of aviation safety through implied field preemption." *Id.* The court adopted *Abdullah*'s "broad, historical approach to hold that federal law generally establishes the applicable standards of care in the field of aviation safety." *Id.* (citing *Abdullah*, 181 F.3d at 367–68; *Witty v. Delta Airlines*, 366 F.3d 380, 384–86 (5th Cir. 2004) (leaving undecided "whether a state claim for failure to warn passengers of air travel risks is entirely preempted, or, as another circuit [*Abdullah*] has held, is preempted to the extent that a federal standard must be used but that state remedies are available," the court held that "at a minimum, any such claim must be based on a violation of federally mandated warnings"). The *Montalvo* court quoted 14 C.F.R. § 91.13 as providing the "general federal standard of care for aircraft operators, requiring that 'no person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.'" *Id.* at 472. Tracking *Abdullah*, the court "similarly h[e]ld that federal law occupies the entire field of aviation safety."[13] *Id.* at 473.

---

[13] *See also Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1006 (9th Cir. 2013) (stating that "the scope of field preemption extends . . . to the standard of care" while noting that "[l]ocal law still governs the other negligence elements (breach, causation, and damages), as well as the choice and availability of remedies" (cleaned up)).

### III.    Discussion

#### A.    Implied Preemption for the Field of Aircraft-Operation Safety

As mentioned, neither *Cleveland* nor *O'Donnell* answers whether the federal standard of care preempts the Oklahoma standard of care for a negligence claim arising during the operation of aircraft. But we agree with *O'Donnell*'s favorable citation of *Abdullah* and agree with that court's reasoning and the other circuits' reasoning agreeing with it. So we now hold that § 91.13's federal standard of care ("careless or reckless manner" for the operation of aircraft) impliedly field preempts Oklahoma's "common carrier" standard of care. In short, the Passengers retain their ability to pursue negligence damages under Oklahoma common law, with the federal standard of care preempting Oklahoma's.

#### B.    Response to the Dissent on Implied Field Preemption

The dissent views the savings clause "remedy" as the entire state negligence-claim, including all its Oklahoma-law elements. But this approach suffers from several problems.

First, nothing about the plain language of the savings clause and its use of "remedies" is as all-inclusive as the dissent makes it. Even after preemption of the standard-of-care element, the damages remedy remains. Further, the dissent fails to give any weight to the numerous circuit-court decisions reading the savings clause differently than the dissent does. Dissent at 13 & n.6. In fact,

20

by reading the regulation's language its way, the dissent would hazard a circuit split.

Second, we see little purpose of the Federal Aviation Administrator promulgating a regulation defining a federal standard of care except to preempt the various competing standards of care for negligence claims. Remember, federal law does not provide airline passengers an independent federal negligence remedy. *See Abdullah*, 181 F.3d at 375 (citing *In re Mexico City Aircrash*, 708 F.2d 400, 408 (9th Cir. 1983)). It follows that even preempting Oklahoma's common-carrier standard-of-care element, the savings clause at § 91.13 retains the state damages remedy. Thus, we do not understand the dissent's conclusion that "today marks the end for common law claims involving aviation security in this circuit." Dissent at 1.

Third, the dissent dismisses as the majority's "policy preference" its reliance on the good reasons Congress had for imposing a uniform, federal standard of care for state negligence claims. Dissent at 18. Congress sought "a uniform and exclusive system of federal regulation." *City of Burbank*, 411 U.S. at 639. And we need to be aware that "a patchwork of state laws in this airspace, some in conflict with each other, would create a crazyquilt effect." *See French v. Pan Am Express, Inc.*, 869 F.2d 1, 6 (1st Cir. 1989). The majority is not on a policymaking foray, it's abiding Congress's stated intentions.

Fourth, the dissent gives just two brief mentions to *Silkwood v. Kerr-McGee*, 464 U.S. 238 (1984). Dissent at 16 n.7, 17. As did *O'Donnell*, we

21

consider *Silkwood* important for its "finding that state court remedies could coexist with the federal nuclear safety regulations that preempted state standards of care." *See also Abdullah*, 181 F.3d at 375 (stating that "in *Silkwood*, the Supreme Court held that a state tort remedy can coexist with federal preemption of nuclear safety" (citing 464 U.S at 256)).

**C.    The district court did not err in granting the Airlines' motion for summary judgment.**

In considering the Airlines' summary-judgment motion, the district court found "no evidence in the record that suggests that the defendants violated any relevant aviation safety regulation." *Bradshaw*, 2023 WL 3807029, at *5. The court concluded that no federal regulation required the pilot or crew to delay responding to the emergency to communicate with the passengers and found it "obvious that the first thing to do was handle the emergency, which required a rapid descent to a safe altitude, and then once it is under control, inform the passengers as to the situation." *Id.* The court also rejected the claim that the pilot should have leveled off above 10,000 feet of altitude, relying on the pilot's testimony and the Airlines' expert's report saying otherwise. *Id.* As to American Airlines, the court noted that "no regulation or procedure [] requires or recommends, that American should have provided medical personnel at the gate even though no injuries were reported and plaintiffs did not request medical attention." *Id.* at *6.

22

In summary, the district court ruled that "defendants' actions were wholly compliant with the relevant federal regulations and their own procedures." *Id.* The court found that the Passengers had not "provided even an iota of evidence that suggests defendants otherwise acted carelessly or recklessly at any point during or after the emergency." *Id.* On the district court's considered judgment, and on our own review, we agree that "defendants satisfied the applicable standard of care[] and have not breached any duty to plaintiffs." *Id.*[14]

## CONCLUSION

For these reasons, we affirm.

---

[14] In their briefing, the Airlines advise us that the Passengers designated no witness or expert "to testify that any part of the Flight was operated in a reckless or careless manner," "failed to depose a single person—not the Captain, not the Flight Attendants, not a corporate representative, not the Airlines' expert." Response Br. at 28. The Passengers did not file a Reply Brief.

**EID**, J., concurring in part and dissenting in part.

The Federal Aviation Act ("FAA") contains a savings clause that provides that "[a] remedy under this part is in addition to any other remedies provided by law." 49 U.S.C. § 40120(c).[1] Yet the majority holds that the FAA impliedly preempts the field of aviation safety standards—including the state law at issue today—relying on the very text that rejects such an outcome. Indeed, today marks the end for common law claims involving aviation security in this Circuit. I reject the majority's approach and would find that there is no preemption here, based on the plain language of the savings clause and our precedent according that language its plain meaning.

I agree, however, with the majority that Plaintiffs failed to raise a federal claim as a matter of law, and I therefore join that conclusion. But in applying the broader standards under Oklahoma law, I must respectfully dissent. Oklahoma law makes the duties owed under the standard of care a fact-specific question for a jury to decide. As such, I would reverse the district court's grant of summary judgment because a genuine dispute of material fact remains. For these reasons, I respectfully concur in part and dissent in part.

## I.

The preliminary legal dispute in this appeal concerns whether federal law—specifically, the FAA—preempts Plaintiffs' common law negligence claims that rely on

---

[1] The language previously preserved "remedies now existing at common law or by statute." 49 U.S.C. § 1506. As explained below, and as the majority notes, the new language was not intended to make a substantive change.

state standards of care.  Plaintiffs identify one state statute that contains common carrier standards as part of their common law negligence claim.  Aplt. Br. at 22 (citing 13 Okla. Stat. § 32).  Under Oklahoma law, which would apply in this diversity suit,[2] "[t]he negligence per se doctrine is employed to substitute statutory standards for parallel common law, reasonable care duties."  *Howard v. Zimmer, Inc.*, 299 P.3d 463, 467 (Okla. 2013).  That means an Oklahoma statutory standard of care does not create a cause of action in itself; rather, it merely modifies an already-existing body of common law, such as existing "causes of action for negligence."  *Id.*  Thus, although the statute supplies an in-depth standard of care, the ultimate claim at issue here is still a state common law negligence claim.

With that in mind, we must determine whether the FAA impliedly preempts the field of aviation negligence claims.  Unlike the majority, I would hold that our precedent has already determined that the FAA's text provides that state standards of care can operate in addition to the FAA's standards of care in the field of aviation.

I begin by providing a brief description of our precedents to clarify that a prior on-point decision of this Court, *Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438 (10th Cir. 1999), remains binding precedent in this Circuit.  And in applying *Cleveland*, I then explain why the main preemption issue here has been asked and answered:  the FAA does

---

[2] American Airlines and Mesa Airlines removed this case from Oklahoma state court to federal court on diversity grounds.  As the district court reiterated, "there is complete diversity between [p]laintiffs and [d]efendants, and the amount in controversy exceeds the sum or value of $75,000."  App'x at 270 (alterations in original).  Moreover, no dispute exists that Oklahoma law would apply to Plaintiffs' personal-injury claims, keeping in mind the preemption question under the FAA.

2

not field-preempt state common law standards of care. Further, the text of the FAA's savings clause prohibits such a result.

**A.**

On two occasions, this Court has analyzed preemption of state common law under the FAA. The first was *Cleveland*. We held there that the FAA does not preempt state common law tort claims. *Cleveland*, 985 F.2d at 1442. Critical to today's case, the *Cleveland* Court reached its conclusion for two independent reasons—two reasons that flow from two different FAA provisions.

As to the first, the Court relied on the plain text of the FAA's savings clause, which stated:

> Nothing contained in this Act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies.

49 U.S.C. § 1506 (1958). Interpreting the "very words" of this clause, *Cleveland* held that "the plain language of the [FAA] suggests that Congress intended that the Act have no general preemptive effect." 985 F.2d at 1442.

Put differently, *Cleveland* read the savings clause to mean "that Congress did not intend to occupy the field of airplane safety to the exclusion of the state common law." *Id. Cleveland* reasoned that "the statute leaves in place remedies then existing at common law." *Id.* at 1442–43. Further, *Cleveland* suggested that existing state common law *remedies*, which are preserved by the savings clause, are deeply intertwined with state common law *claims*, because state remedies for common law tort claims often "have the same effect as direct state regulation." *Id.* at 1441–42 (citing *San Diego Bldg. Trades*

3

*Council v. Garmon*, 359 U.S. 236, 247 (1959)).  And "[t]here is nothing inconsistent with Congress's goal of maximum safety and common law claims." *Id.* at 1443.  Therefore, given that the savings clause made clear that nothing in the FAA altered state remedies existing at common law or by statute, we held that the "Act does not preempt state common law." *Id.*

The *Cleveland* Court then turned to a second, independent reason—but only to "bolster[] this conclusion." *Id.*  Applying Supreme Court precedent, the *Cleveland* Court relied on the *expressio unius est exclusio alterius* canon of interpretation, which stands for the proposition that the "expression of one thing implies the exclusion of others." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012).  As the *Cleveland* Court observed, the Supreme Court has used the *expressio unius* canon to hold "that implied preemption is generally inapplicable to a federal statute that contains an express preemption provision."  985 F.2d at 1443 (citing *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517 (1992)).  Thus, looking to an express preemption provision in the Airline Deregulation Act that covered "rates and routes,"[3] the *Cleveland* Court stated that the FAA could not impliedly preempt state tort law because the ADA's clause did not also expressly preempt that area of regulation.  *Id.* at 1443–44 & n.11.

What we can take away from *Cleveland*, then, are two independent reasons for why the FAA does not preempt state common law tort claims:  (1) the plain text of the

---

[3] The Airline Deregulation Act expressly preempts state regulation of airlines' rates, prices, routes, and services.  49 U.S.C. § 41713(b)(1).

4

FAA's savings clause and (2) the *expressio unius* canon's application to an express preemption provision.

**B.**

About two decades later, this Court revisited those two independent reasons in *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318 (10th Cir. 2010). There, we first pointed out that the FAA's savings clause did not affect the case because *O'Donnell* involved a state statute that did "not involve state tort remedies" like in *Cleveland* and "instead impose[d] substantive requirements." *Id.* at 1326. Indeed, unlike *Cleveland*, *O'Donnell* did not involve a common law tort claim at all: the plaintiff in *O'Donnell* was an airline seeking to enjoin the state of New Mexico from regulating the airline's in-flight alcoholic-beverage services. *Id.* at 1321–22. Remedies stemming from common law claims were of no concern, and so *O'Donnell* reasoned that the savings clause did not apply.[4]

Next, even though the *Cleveland* Court only used the *expressio unius* canon to "bolster[]" its conclusion, 985 F.2d at 1443, the *O'Donnell* Court went on to say that *Cleveland* "relied, in significant part, on the premise," 627 F.3d at 1326. And the *O'Donnell* Court then stressed that "the Supreme Court appear[ed] to have rejected [*Cleveland*'s] reasoning" to the extent that *Cleveland* relied on *expressio unius*. *Id.* (citing *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 873 (2000)).

Based on those two considerations, *Cleveland* did not "dictate the outcome" in *O'Donnell*, and this Court had to independently address why the FAA impliedly occupied

---

[4] *O'Donnell* likewise does not control here because this case, like *Cleveland*, concerns common law claims of negligence that implicate the FAA's savings clause.

5

the field of aviation safety to the exclusion of state regulations imposing substantive requirements on airlines. *Id.* This Court then went on to determine that federal regulation preempted such regulatory state statutes. *Id.* The Court noted that, in response to a series of fatal crashes of aircrafts operating under separate flight rules, "[t]he FAA was enacted to create a 'uniform and exclusive system of federal regulation' in the field of air safety." *Id.* (citation omitted). And the Court found it especially significant that one regulation promulgated pursuant to the FAA "specifically address[es] airlines' alcoholic beverage services." *Id.* (citing 14 C.F.R. § 121.575). Thus, because of the "FAA's purpose to centralize aviation safety regulation and the comprehensive regulatory scheme promulgated pursuant to the FAA," this Court concluded that "federal regulation occupies the field of aviation safety to the exclusion of state regulations." *Id.*

## C.

Taken together, *O'Donnell* did *not* overturn *Cleveland*'s holding that, in light of the FAA's savings clause, the FAA "does not preempt state common law"—the very issue in this case. *Cleveland*, 985 F.2d at 1443. To see why this is so, it is helpful to understand what remains good law in this Circuit.

We may overrule a prior Tenth Circuit opinion "if subsequent controlling law" from the Supreme Court "undermined" the prior opinion's reasoning. *United States v. Salazar*, 987 F.3d 1248, 1254 (10th Cir. 2021). Indeed, that was exactly what this Court recognized in *O'Donnell*. "[T]he Supreme Court," we observed, "appear[ed] to have rejected [the portion of *Cleveland*'s] reasoning" based on the *expressio unius* canon. *O'Donnell*, 627 F.3d at 1326 (citing *Geier*, 529 U.S. at 873).

6

But if Supreme Court precedent only calls *part* of a Tenth Circuit opinion into question, the remainder of the opinion continues to be the law of this Circuit. That is because our inquiry focuses on "whether the subsequent Supreme Court decision *contradicts* or *invalidates* our prior analysis." *United States v. Brooks*, 751 F.3d 1204, 1209–10 (10th Cir. 2014). If our analysis remains untouched by a Supreme Court decision's reasoning, that analysis continues to stand as the law, absent en banc consideration or another intervening Supreme Court decision. *Id.* at 1209.

As explained, *O'Donnell* did not overturn *Cleveland* in full. *O'Donnell* only overturned the part of *Cleveland* dealing with the *expressio unius* canon, which itself only applied to an "express preemption provision" dealing with "rates and routes." *Compare O'Donnell*, 627 F.3d at 1326, *with Cleveland*, 985 F.2d at 1443. And that reasoning concerning an express preemption provision did not affect *Cleveland*'s independent reasoning under the "plain language" of the FAA's savings clause. 985 F.2d at 1442. Again, *Cleveland* stressed that the reasoning under the express preemption provision was only meant to "bolster[]" its textual analysis under the FAA's savings clause. *Id.* at 1443.

With that in mind, we did not and could "[]not overturn the decision of another panel of this court." *Brooks*, 751 F.3d at 1209 (quoting *United States v. Meyers*, 200 F.3d 715, 720 (10th Cir. 2000)) (internal quotation marks omitted). Therefore, *Cleveland* and its analysis under the savings clause remains our law and is authoritative on how to interpret the FAA's savings clause and apply it to state common law tort claims.

The majority does not quibble with this understanding of *Cleveland* as binding precedent. Nevertheless, the majority downplays *Cleveland*'s relevance, describing

7

*Cleveland* and *O'Donnell* as "addressing preemption by distinguishing the type of state law involved—a state regulation versus a common-law tort-damages remedy." Maj. Op. at 11. And because of that distinction, the majority suggests, "neither case speaks to the issue before us." *Id.*

In one respect, the majority is right: *Cleveland* and *O'Donnell* did involve two distinct types of state laws. But the majority fails to see the significance of that distinction. It is precisely *because* of the distinction between the types of state laws at issue that *Cleveland* speaks to the issue before us. To reiterate, the *O'Donnell* Court made clear that *Cleveland*'s reasoning under the FAA's savings clause did not apply, solely because the statute in *O'Donnell* did "not involve state tort remedies and instead impose[d] substantive requirements." 627 F.3d at 1326. That is why *Cleveland*'s analysis under the FAA's savings clause "d[id] not dictate the outcome" in *O'Donnell*. *Id.* Put simply, *Cleveland* applies to state common law claims, which implicate the FAA's savings clause. And because the claim at issue here is a state common law claim, *Cleveland* controls our analysis.

## II.

Overlooking that *Cleveland* remains binding, on-point precedent is the majority's first misstep. The next one is with how it interprets and applies the FAA's savings clause. Based on *Cleveland* and its plain-text reading of the savings clause—a reading that flows from the relationship between remedies and standards of care in common law tort claims—I would conclude that the FAA does not field-preempt the standard of care in Plaintiffs' negligence claims.

8

**A.**

The majority does not analyze the savings clause at all before concluding that the federal scheme of aviation standards preempts standards under state law. And its conclusion runs counter to both *Cleveland* and the clause itself.

Recall that *Cleveland*'s principal reason for holding that the FAA does not preempt state common law claims was that the "plain language of the [FAA's savings clause] suggests that Congress intended that the Act have no general preemptive effect." 985 F.2d at 1442. The language to which the *Cleveland* Court referred stated that "[n]othing contained in [the FAA] shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies." *Id.* (quoting 49 U.S.C. § 1506).

Years after *Cleveland* but a year before *O'Donnell*, Congress amended the FAA's savings clause to something that on first glance may appear broader. The clause now applies not just to "remedies now existing at common law or by statute," 49 U.S.C. § 1506, but to "any other remedies" under the law, *id.* § 40120(c). In full, the clause now states, "A remedy under this part is in addition to any other remedies provided by law." *Id.*

In any event, in amending the FAA, Congress specified that its modification was not intended to effect a substantive change from its predecessor clause. *See* Pub. L. 103–272, 108 Stat. 745, 1118 (1994) (revising the savings clause of the FAA "without substantive change"); *Drake v. Lab'y Corp. of Am. Holdings*, 458 F.3d 48, 58 n.9 (2d Cir. 2006) (noting that subsequent changes to the FAA's preemption and

savings clauses were not "substantive"). Because the savings clause did not apply in *O'Donnell*, this Court did not address the amendment. This case now requires that we consider the savings clause—which Congress did not substantively change— while keeping *Cleveland*'s reasoning in mind.

As it turns out, *Cleveland*'s plain-text reading holds firm even after the amendment—not least because the savings clause is substantively the same as it was at the time of *Cleveland*. For one thing, *Cleveland*'s reading makes good sense in light of the clause's amended language stating that remedies under the FAA are to be had "*in addition to* any other remedies provided by law." 49 U.S.C. § 40120(c) (emphasis added). Remedies "provided by law" include those existing at common law. *Id.* And remedies existing at common law include remedies that stem from a violation of state standards of care—just like the ones here. Under the amended savings clause, then, remedies provided by the FAA cannot eliminate state remedies tethered to state standards of care.[5]

---

[5] If that were not reason enough, other considerations also support *Cleveland*'s reading. For one thing, the FAA expressly states that it provides only "*minimum standards*" for aviation safety. 49 U.S.C. § 44701(a)(2) (emphasis added). Meanwhile, implied field preemption makes sense (if ever) only when "the federal statute is meant to establish a *maximum* standard or requirement on which everyone can rely, so that, for example, manufacturers serving a national market will not be compelled to comply with the law of the most restrictive state." Scalia & Garner, *supra*, at 290. That is not the case here. And, if nothing else, the presumption against preemption should counsel us against reading the FAA's savings clause as preempting state standards of care, since no clear statutory language so commands. *See id.* (describing the presumption against preemption and its application in the context of implied field preemption).

Thus, even if *Cleveland* did not remain good law (it does) or was not directly on point here (it is), its reasoning stands on its own bottom:  a fair reading of the FAA's savings clause demonstrates that the federal statute does not preempt state standards of care, because doing so would preclude many plaintiffs, including those here, from obtaining the "other remedies provided by law" that the savings clause preserves.  49 U.S.C. § 40120(c).

## B.

For its part, the majority gives short shrift to the savings clause.  In concluding that the FAA preempts state standards of care despite the savings clause, the majority reasons that "[e]ven after preemption of the standard-of-care element, the damages remedy remains."  Maj. Op. at 20.  That reasoning rests on a distinction between state *remedies* and state *standards of care*—with the former being permitted under the FAA and the latter being supposedly preempted by the FAA's standards of care.

A look at *Cleveland* shows that this distinction cannot stand.  *Cleveland* did not just hold that the FAA does not preempt state tort *remedies*.  Looking to the savings clause, *Cleveland* held more broadly that the FAA does not preempt state common law *claims* as a whole.  *See, e.g.*, 985 F.2d at 1442; *id.* at 1442–44 ("Congress did not intend to occupy the field of airplane safety to the exclusion of *the state common law . . .* There is nothing inconsistent with Congress's goal of maximum safety and *common law claims . . .* [O]ur conclusion [is] that the savings clause demonstrates the Federal Aviation Act does not preempt *state common law. . . .* We conclude that Congress has not indicated a

11

'clear and manifest' intent to occupy the field of airplane safety to the exclusion of *state common law*." (emphases added)).

This reasoning makes sense when considering the relationship between remedies and standards of care in a common law tort claim. As explained, *Cleveland* itself suggested that state common law *remedies*, which are preserved by the savings clause, are deeply intertwined with state common law *claims*, because state remedies for common law tort claims often "have the same effect as direct state regulation." *Id.* at 1441–42 (citing *Garmon*, 359 U.S. at 247). Indeed, *Cleveland* dealt with the reality that the FAA could have different standards of care than those of state tort claims. *Id.* at 1444–45 (rejecting an airline's argument that the FAA "impliedly preempts state tort *claims* because the federal regulatory framework actually conflicts with state common law *duties*" (emphases added)). And *Cleveland* further held that both "state common law standards and the federal regulations" could *coexist*, given that no "physical impossibility" or "obstacle" got in the way of their dual application. *Id.* at 1445 ("We find that is not impossible to meet both state common law standards and the federal regulations.").

Thus, under *Cleveland*, the majority's distinction between *remedies* and *standards of care* is one without a difference. I would instead rely on *Cleveland* as authoritative on how the FAA's savings clause affects the question of implied field preemption. This is especially so because, again, Congress specified that its amended savings clause did not create a substantive change to the clause that *Cleveland* interpreted. *See* Pub. L. 103–272, 108 Stat. 745, 1118 (1994); *Drake*, 458 F.3d at 58 n.9.

12

Under that clause and the FAA's regulatory scheme, the FAA does not "impliedly preempt[] state tort claims." *Cleveland*, 985 F.2d at 1444. As before, we should "conclude that Congress has not indicated a 'clear and manifest' intent to occupy the field of airplane safety to the exclusion of state common law." *Id.* "To the contrary, it appears through the savings clause that Congress has intended to allow state common law to stand side by side with the system of federal regulations it has developed." *Id.* Quoting *Cleveland*, we could have ended there.

The majority instead steps out of line with Circuit precedent. It overlooks the parts of *Cleveland* that remain good law, relying instead solely on *O'Donnell* and sister-circuit decisions that *O'Donnell* "favorably cit[ed]." Maj. Op. at 15. Specifically, the majority relies on reasoning from four sister circuits to support the proposition that courts can keep "state and territorial law remedies" in place while preempting "only the standards of care for the safe operation of aircraft." *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 375 (3d Cir. 1999).[6] That proposition, however, was not central to *O'Donnell*'s holding—given that *O'Donnell* dealt narrowly with substantive state regulations, rather than common law tort claims and the FAA's savings clause—and so *O'Donnell* did not

---

[6] The majority relies principally on *Abdullah*, but it also discusses decisions from the Sixth, Second, and Ninth Circuits. *See* Maj. Op. at 15–19. Although these decisions held (or opined in dicta) that Congress intended to impliedly preempt the field of aviation safety, none of them engaged with the FAA's savings clause, instead relying almost exclusively on *Abdullah*'s reasoning. *See Greene v. B.F. Goodrich Avionics Sys., Inc.*, 409 F.3d 784, 794–95 (6th Cir. 2005); *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007); *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 224–25 (2d Cir. 2008) (dicta).

13

actually adopt the holdings of those sister circuits. *See* 627 F.3d at 1327. Thus, those sister-circuit decisions do not bind us; *Cleveland* does.

Further, interpreting the savings clause in such a way allows the FAA to nullify remedies currently provided by law—i.e., the very result that the clause tells us not to reach. The clause specifies that any remedies stemming from the FAA will be "in addition to," not to the subtraction of, "any other remedies provided by law." 49 U.S.C. § 40120(c). And put simply: a reading of the FAA that eliminates a common law remedy would not be "in addition to any other remedies provided by law." *Id.*

### C.

The majority asserts that the plain language of the savings clause is not as "all-inclusive" as my reading might make it seem, because "[e]ven after preemption of the standard-of-care element, the damages remedy remains." Maj. Op. at 20. But the majority overlooks the fact that a damages remedy often will *not* remain if the (stricter) federal standard of care is substituted for a state standard of care.

Realistically, to obtain a common law remedy, some state standards of care may require lower thresholds of proof than the standards under the FAA. In other words, state standards of care may include broader protections for airplane passengers. If the FAA could raise the threshold for what an injured passenger must prove—and thereby remove a common law remedy from the injured passenger—then relief under the FAA would not be "in addition to" those other remedies. *Id.*

Take this case for example. Regulations under the FAA generally prohibited American Airlines and Mesa Airlines ("the Airlines") from operating an aircraft "in a

14

careless or reckless manner so as to endanger the life or property of another." 14 C.F.R. § 91.13(a). Meanwhile, the standard of care under Oklahoma law would arguably find liability in a broader range of cases. Indeed, Oklahoma law would potentially find a violation if the Airlines failed to "use the utmost care and diligence for their safe carriage" or failed to "provide everything necessary for that purpose." Okla. Stat. tit. 13, § 32.

A gap in liability may exist, then, between acting carelessly or recklessly under the FAA and failing to provide everything necessary for the utmost care under Oklahoma law. Thus, some airlines may not violate the FAA's higher standards of care, while running afoul of Oklahoma's broader standards. And because Oklahoma law employs the doctrine of negligence per se "to substitute statutory standards [of care] for parallel common law, reasonable care duties," *Howard*, 299 P.3d at 467, a plaintiff's right to recovery for a common law tort claim hinges largely on which statutory standard of care applies.

That being so, the FAA sets out on preserving "any other remedies provided by law," common law included, even if a plaintiff cannot meet the higher standard of proof set out by the FAA. 49 U.S.C. § 40120(c). A plaintiff's right to those "other remedies provided by law" (that is, remedies provided under a negligence per se claim) is only preserved if the Oklahoma statutory standard of care—with its lower standard of proof— applies.[7] This is especially true because Oklahoma's standard of care is more specific

---

[7] To be sure, the Oklahoma Supreme Court observed that a "violation of a federal regulatory scheme" may "support a claim of negligence per se" under state

than the FAA's general standards, which may be "too vague to warrant the imposition of negligence per se."  Sean S. Kelly, *Federalism in Flight: Preemption Doctrine and Air Crash Litigation*, 28 Trans. L.J. 107, 116 & n.94 (2000) (citing *Ridge v. Cessna Aircraft Co.*, 117 F.3d 126, 131 (4th Cir. 1997)).

In this way, the majority's reading of the FAA overrides a common law remedy for an entire class of cases—not to mention others.  The majority allows the FAA to preempt all remedies based on broader state standards of care.  Respectfully, I do not agree with such an interpretation.

"[W]hen Congress has made its intent known through explicit statutory language, the courts' task is an easy one."  *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990).  Here, even if we overlook *Cleveland*, the FAA's very language demonstrates that Congress intended remedies under the FAA to be "in addition to" remedies at common law— remedies that may come about from violations of broader state standards of care.  49 U.S.C. § 40120(c).  If the FAA is to serve as a supplement to state common law (as its savings clause would have it do), it cannot override a field of common law remedies.

The majority accuses my interpretation of "hazard[ing] a circuit split."  Maj. Op. at 20.  But even if my interpretation marks a departure from those of other circuits, a possible circuit split is no reason to ignore our own precedents and the plain text of the

---

law.  *Howard*, 299 P.3d at 468.  That observation arose in the context of distinguishing federal private rights of action from parallel state negligence actions, *see id.* at 467, but it is consistent with the longstanding notion that courts can, without conflict, award state remedies arising from violations of federal standards, *see Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 251 (1984).  Neither of those principles, however, speaks directly to the preemption issue before us.

16

FAA.  After all, although we often aim to avoid creating circuit splits without a strong reason for doing so, "inconsistency with an unambiguous statutory direction from Congress surely qualifies as just such a strong reason." *United States v. Games Perez*, 695 F.3d 1104, 1123 n.7 (10th Cir. 2012) (Gorsuch, J., dissenting from denial of reh'g en banc) (citations and internal quotation marks omitted).  The FAA's savings clause provides us with an unambiguous statutory direction that we are not at liberty to ignore—notwithstanding that other circuits have done so.  Likewise, though we may look to sister-circuit opinions for persuasive value, we must follow our own precedents when those precedents speak to the issue before us.  *See, e.g.*, *Brooks*, 751 F.3d at 1209.  Because *Cleveland* remains binding, on-point precedent in this Circuit (even after *O'Donnell*), we are duty-bound to apply it.

## D.

Given that "Congress has not entirely displaced state regulation over the matter in question," state law could only be preempted if "it is impossible to comply with both state and federal law," or "where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984).  And neither of those situations have occurred here.

"[W]e are not faced with an irreconcilable conflict between the statutory scheme and the persistence of common-law remedies." *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 299 (1976).  No federal standard of care under the FAA requires an airline to do something that the Oklahoma law here prohibits.  And conversely, no federal standard

17

prohibits an airline from doing something that the Oklahoma law here requires. In such circumstances, "the common-law action and the statute are not 'absolutely inconsistent' and may coexist, as contemplated by [the savings clause]." *Id.*

It is worth emphasizing that the majority's parade of horribles associated with states having different standards of care does not amount to a true conflict with federal law. The majority suggests, including through its reliance on sister-circuit decisions, that it would be a more logical system for interstate aircraft operation if the federal government controlled it all. Maj. Op. at 16–18, 20–21. But the majority's policy preferences aside, Congress's policy preferences indicate that remedies obtained from the violation of federal aviation standards will be "in addition to" all other remedies. 49 U.S.C. § 40120(c). And it is Congress's expressed intent that matters.

In sum, *Cleveland* remains good law and determines that the preemption question here has been asked and answered. Under *Cleveland*, as well as under a plain reading of the FAA's savings clause, the FAA does not impliedly preempt state common law standards of care, because doing so would remove remedies available at common law. As such, I respectfully disagree with the majority on the issue of implied field preemption.

### III.

Given that both federal and state standards of care apply, the next question is whether Plaintiffs failed to raise a genuine issue of material fact under federal aviation standards. I agree with the majority that the Airlines are entitled to judgment as a matter

of law as to Plaintiffs' federal claims. But I must dissent in part, because Plaintiffs do in fact raise a genuine dispute of material fact under Oklahoma law.

On appeal, the only Oklahoma standard of care that Plaintiffs rely on comes from Okla. Stat. tit. 13, § 32, which provides:

> A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill.

Okla. Stat. tit. 13, § 32. Oklahoma courts recognize that the degree of care to prevent injury under § 32 differs depending on the facts presented, *Okla. Ry. Co. v. Austin*, 207 P.2d 769, 771 (Okla. 1949), which is why "[w]hether or not a carrier for hire is guilty of failure to use utmost care as required by § 32 is a question of fact to be determined by the trier of fact," *Markwell v. Whinery's Real Est., Inc.*, 869 P.2d 840, 846 (Okla. 1994). That is why, in every Oklahoma case that I have found on the matter, a § 32 claim has survived summary judgment so that the jury could determine whether "utmost care" was used. *Id.*

The district court should have done the same here. A jury had to determine what, if anything, the Airlines had to do to provide "everything necessary" to offer Plaintiffs the "utmost care and diligence for their safe carriage." Okla. Stat. tit. 13, § 32; *see Markwell*, 869 P.2d at 846. And Plaintiffs claim that those duties may have included (1) whether aircraft operators communicate with passengers before remedying an in-flight emergency, (2) that aircraft operators descend to a height above 10,000 feet in the event of depressurization, or (3) that aircraft operators are required to provide medical personnel at the gate upon arrival even when no injuries were reported. Because

19

Oklahoma law directs these questions to a jury, I would reverse the district court's grant

of summary judgment and remand the case for further proceedings.[8]

## IV.

For these reasons, I concur in part and dissent in part.

---

[8] I note that even though this statute has been around for over a century, § 32's standard of care has never been applied to aviation carriers. I would leave it to the district court to address this issue on remand.